**JOHN W. JOHNSON, INC. and N. W. Lyle, Inc.**

v.

**ATLANTIC STATES CONSTRUCTION COMPANY.**

Civ. No. 17766.

United States District Court
D. Maryland.

Nov. 9, 1967.

James J. Cromwell, Silver Spring, for plaintiffs.

Eugene R. Simons, Atlanta, Ga., for defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Plaintiffs, John W. Johnson, Inc. ("Johnson"), a District of Columbia corporation, and N. W. Lyle, Inc. ("Lyle"), a Maryland corporation, describing themselves as joint venturers, filed a declaration in this case on September 30, 1966, against defendant, Atlantic States Construction Company ("Atlantic"), a Georgia corporation, in the Circuit Court for Montgomery County, Maryland, alleging that defendant is indebted to plaintiffs in the amount of $46,261.00, for materials sold and delivered and services performed. Summons was issued by the Circuit Court for Montgomery County on October 3, 1966.

On October 27, 1966, pursuant to 28 U.S.C. § 1441, defendant removed the case to this Court alleging the existence of diversity of citizenship and the jurisdictional amount. By affidavits of its officers filed in these proceedings, defendant has informed this Court that on January 27, 1965, Atlantic entered into a contract with the Georgia Ports Authority ("the Authority") to construct certain facilities for the Authority in Savannah, Chatham County, Georgia; that on April 19, 1965, Atlantic entered into a subcontract with Johnson pursuant to which Johnson was to perform all painting in connection with Atlantic's January 27, 1965 contract with the Authority; that later, at Johnson's re-

quest, the April 19, 1965 Atlantic-Johnson contract was amended on January 12, 1966, to delete certain work; and that on that latter date, Atlantic contracted with Lyle pursuant to which Lyle was to perform that portion of the work eliminated from the Atlantic-Johnson contract.

█ On November 1, 1966, defendant filed a Motion for Change of Venue in this Court, seeking to have this case transferred to the United States District Court for the Southern District of Georgia, Savannah Division, under the authority of 28 U.S.C. § 1404(a).[1] The defendant's affidavits state that the Authority is a quasi-public body of the State of Georgia; that both the Atlantic-Johnson and the Atlantic-Lyle subcontracts were entered into at Atlanta, Georgia; that in both of those subcontracts, the Authority is referred to as "Owner", Atlantic as "Contractor" and the Authority-Atlantic contract as the "General Contract"; that all of the work performed by plaintiffs under the two subcontracts was performed in Chatham County, Georgia; that the substantive issues in this case involve interpretations and determinations in connection with the Authority-Atlantic contract and the aforesaid two subcontracts; that all of those questions are governed by Georgia law;[2] that the witnesses called by Atlantic will include five representatives of the Authority, all of whom reside in Chatham County, Georgia, except one who resides in another county of Georgia, four representatives of the engineer-architect having authority and duties in connection with the Authority-Atlantic contract and the work thereunder, two of whom reside in Chatham County, Georgia and two in South Carolina, and five representatives of Atlantic, one of whom resides in Savannah, Chatham County, and one in a Georgia county other than Chatham, and three in Alabama; that Atlantic will be able to have all witnesses available to testify in this case if it is tried in Savannah, Georgia, but will have difficulty in securing the attendance of Georgia officials and of representatives of the engineer-architect if the case is tried in this Court; that there are voluminous records relevant to this case, of the Authority, Atlantic and others all of which are physically present in Georgia; that it may be important for the Court and the Jury to view the work performed by plaintiffs; that Johnson had previously performed work for Atlantic in Chatham County, Georgia, and in states other than Maryland; that Atlantic qualified to do business in Maryland solely for purposes of enabling it to enter into and perform work under a contract dated September 14, 1964, to construct Laurel Plaza Shopping Center, at Laurel, Maryland, which work was completed in November, 1965; that the only other business transacted in Maryland by Atlantic was the construction of another shopping center in Laurel, Maryland pursuant to a contract dated May 13, 1965, which work was completed in February, 1966; that since February, 1966, defendant has engaged in no activities in Maryland other than the filing of mechanics' liens for the balance of the sums due it pursuant to the two Laurel contracts and other than the commencement of foreclosure proceedings in connection with such liens in the Circuit Court for Prince George's County, Mary-

---

1. This Court finds that defendant's motion to transfer was timely filed. Neither 28 U.S.C. § 1404(a) nor any other statute establishes specific time limits within which such a motion must be made. There was clearly no undue delay in this case. See 1 Barron & Holtzoff (Wright ed.) Federal Practice and Procedure, § 86.1, p. 409 (1960).

2. The Authority-Atlantic contract was apparently entered into in Georgia, as was the Atlantic-Lyle subcontract. Johnson takes the position that its subcontract with Atlantic was consummated in Maryland as a copy was furnished to Johnson's office for final execution. The state of this record does not enable the Court presently to express any opinion concerning whether Georgia or Maryland law will or will not apply in connection with the interpretation of one or more provisions of the General Contract or of either subcontract.

land; that no negotiations between plaintiffs and Atlantic in connection with the two subcontracts involved in this case occurred at defendant's Laurel, Maryland construction office; and that defendant had no office or assets in Maryland when this suit was instituted in September, 1966.

Plaintiffs, opposing Atlantic's Motion for Change of Venue, have filed an affidavit of Johnson's president stating that all of plaintiffs' records pertaining to their subcontracts with Atlantic are kept in Maryland; that all of plaintiffs' supervisory personnel involved in the performance of the subcontracts reside in Maryland or in the District of Columbia; and that an expert consultant, a corporation with its offices located in Maryland, was retained by plaintiffs, examined the work here in question, and reported its findings to plaintiffs, and that plaintiffs supplied those findings to defendant.

On January 6, 1967, defendant also filed an answer in this case, denying that it is indebted in any amount whatsoever to plaintiffs, and also alleging alternative defenses.

Counsel for all parties have informed this Court that no evidentiary hearing is desired in this case in connection with defendant's motion to transfer and that there is no dispute as to the basic facts stated hereinabove which has or might have any possible relevance with regard to that motion. This Court will therefore decide the issues raised by defendant's motion to transfer, without a hearing, pursuant to Local Rule 7 of this Court.

Section 1404(a) of 28 U.S.C. provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.* [Emphasis supplied].

■ Assuming that a district court has the power to transfer this civil action

under that statute as requested by defendant—that is to say, assuming that this proceeding could have been originally brought in the United States District Court for the Southern District of Georgia, Savannah Division—the exercise of that power is committed "to the sound discretion of the district court to be exercised in light of all the circumstances of the case." 1 J. Moore, Federal Practice ¶ 0.145[5], at 1779 (2d ed. 1964). In opposing defendant's motion for a change of venue in this case, plaintiffs have raised questions which relate both to the power of this Court to grant the requested transfer, and to the exercise by this Court of its discretion if it has such power. Stated in the language of Section 1404(a), those questions are: (1) Is this an action which "might have been brought" by the plaintiffs in the transferee forum, i.e., the Savannah Division of the United States District Court for the Southern District of Georgia, within the meaning of that phrase? and (2) Would the trial of this case in that said Georgia Court rather than in this Court serve the "convenience of parties and witnesses" and be "in the interest of justice"?

■ This Court has little difficulty in concluding that the latter or second question must be answered in the affirmative. Georgia's points of contact with this case are much greater and more important than those of Maryland. The interest of both the litigants and of the public will almost surely be balanced if this case is transferred as defendant requests, even though, as the Fourth Circuit wrote, in Akers v. Norfolk and Western Ry. Co., 378 F.2d 78, 80 (4th Cir. 1967 (per curiam), " * * * the primary right of the plaintiff to choose his forum, [is] a selection not easily to be overthrown." The conclusion that this is a case which should be tried in Savannah, Georgia and not at Baltimore, Maryland, is well within the standards enunciated and elaborated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); by Judge Winter, then a District Judge sitting

in this Court, in Paesch v. American Cyanamid Co., 257 F.Supp. 116 (D.Md. 1966), aff'd. in Paesch v. Winter, 366 F.2d 756 (4th Cir. 1966) ; by the authorities cited in Paesch v. American Cyanamid Co., supra, 257 F.Supp. at 117; in Morganstern v. Marriott-Hot Shoppes, Inc., 270 F.Supp. 75 (D.Md.1967) ; and by 1 J. Moore, Federal Practice ¶ 0.145 [5], at 1780–1783 (2d ed 1964). This is particularly true in view of the conditions which this Court, following the pattern suggested in *Paesch*, supra, 366 F.2d at 757, and followed in *Morganstern*, supra, 270 F.Supp. at 77, is including in its within Order. These conditions require that defendant file in this case, before the within Order granting the motion of defendant to transfer becomes effective, an undertaking by defendant to pay the reasonable cost of necessary airplane or other travel between their respective Maryland or District of Columbia residences and Savannah, Georgia of plaintiffs' necessary witnesses and of their room and board in Savannah, Georgia, during the trial of this case; the reasonable additional or extra fees or compensation of plaintiffs' expert witnesses because the trial is held in Savannah, Georgia rather than in Baltimore, Maryland; the reasonable additional or extra compensation which plaintiffs are required to pay to any necessary witnesses because the trial is held in Savannah, Georgia rather than in Baltimore, Maryland; the reasonable cost of transporting from the Maryland or District of Columbia principal offices of the plaintiffs such records or exhibits as are reasonably required in Savannah, Georgia by plaintiffs for trial of the case; and to the extent the District Court, sitting in Savannah, Georgia

deems the same fair and equitable, such other costs of plaintiffs as that Court determines should be borne by defendant so that the within Order of this Court shall not cause expenses to plaintiffs which the latter should not have reasonably expected to incur but for the within Order of this Court granting defendant's motion to transfer.

This Court now turns to the questions raised by plaintiffs' contention that this Court does not have the power, pursuant to 28 U.S.C. § 1404(a), to order the transfer here sought by defendant because the Georgia federal District Court sitting at Savannah is not one where the action "might have been brought" since plaintiff Lyle, a Maryland corporation, was not authorized to do business in the State of Georgia when this proceeding was instituted, and therefore, so plaintiffs contend, lacked capacity to bring this suit in that Court at the time this action was commenced in Maryland.

Plaintiffs' argument that plaintiff Lyle could not have brought this suit in a District Court in Georgia is grounded upon the proposition that in order to determine whether this action could have been brought in such a Court, it is first necessary to determine whether the action could have been brought in a Georgia state court. Plaintiffs' contention is that under Georgia law a Maryland corporation not authorized to do business in the State of Georgia cannot bring suit in the courts of Georgia. Plaintiffs reach this result by combining the Georgia statute providing for recognition of foreign corporations on the basis of comity[3] with the Maryland statute which sets forth the requirements which must be met before a suit may be maintained in Maryland by a foreign corporation.[4]

---

3. Corporations created by other States or foreign Governments shall be recognized in the courts of this State only by comity, and so long as the same comity is extended in the courts of such other States or foreign Governments to corporations created by this State. [Ga.Code Ann. § 22–1501 (1966)].

4. (c) *When suit may be maintained by corporation.*—No suit shall be maintained in any court of this State by any such foreign corporation or by anyone claiming under such foreign corporation if such foreign corporation is doing or has done intrastate or interstate or foreign business in this State without having complied with

384

The conclusion which plaintiffs draw from an analysis of those statutory provisions is that since under Maryland law, a Georgia corporation which was not entitled to do business in the State of Maryland when this suit was commenced could not maintain suit in the state courts of Maryland, then under the Georgia comity provision, a Maryland corporation, such as Lyle, which is not authorized to do business in the State of Georgia may not bring suit in the courts of that State. This being so, argue plaintiffs, citing Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), Lyle would have lacked the capacity to sue in any United States District Court sitting in Georgia. In Woods v. Interstate Realty Co., supra, and prior thereto as one ground for its discussion in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), the Supreme Court held that "the policy of Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] precluded maintenance in the federal court in diversity cases of suits to which the State had closed its courts." Woods v. Interstate Realty Co., supra, 337 U.S. at 537, 69 S.Ct. at 1237.

In Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), and in Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the Supreme Court construed 28 U.S.C. § 1404(a) and particularly the words "where it might have been brought," as those words are used in that statute. Taken together, these two cases reveal that Hoffman v. Blaski, supra, stands for

the proposition that a transfer under 28 U.S.C. § 1404(a) is prohibited where the transferee court is "improper for both venue and service of process", regardless of the defendant's waiver or consent, Van Dusen v. Barrack, supra, 376 U.S. at 620, 84 S.Ct. at 811. In Barrack, however, 376 U.S. at p. 621, 84 S.Ct. at p. 812, the Court held that those words, namely, "where it might have been brought" do not "restrict the availability of convenient federal forums by referring to state-law rules, such as those concerning capacity to sue, which would have applied if the action had originally been instituted in the transferee federal court." The Court also wrote in Barrack (376 U.S. at 622, 84 S.Ct. 812), that the underlying purpose of Section 1404(a), "militates against restricting the number of permissible forums within the federal system" and (at 623) that a contrary decision would permit plaintiffs (in Barrack, the plaintiffs were personal representatives of Pennsylvania decedents who were not qualified to sue in Massachusetts; here, one of the plaintiffs, Lyle, is a Maryland corporation which was not qualified to sue in Georgia when this suit was commenced) "unilaterally to reduce the number of permissible federal forums simply by refraining from qualifying as representatives in States other than the one in which they wished to litigate."

Barrack would appear controlling in this case. The factual distinction between the corporate plaintiff Lyle herein and the individual plaintiffs in Barrack would hardly seem to disturb the seemingly perfect fit of Barrack to this case.

the requirements of § 90 of this article, until such foreign corporation or the person claiming under it has shown to the satisfaction of the court
(1) That such foreign corporation, or a foreign corporation successor thereto, has complied with the requirements of § 90 of this article, or
(2) That neither such foreign corporation nor any foreign corporation successor thereto is continuing to do intrastate or interstate or foreign business in this State, and

(3) That such foreign corporation or the person claiming under it has paid to the Commission the penalty provided for in subsection (d) hereof. [2 Md.Ann.Code art. 23, § 91(c) (1966 Replacement Vol.)].
The references to Section 90 in this provision relate to the procedures pursuant to which a foreign corporation may qualify to do business in Maryland. See 2 Md.Ann.Code art. 23, § 90 (1966 Replacement Vol.).

Federal Rule of Civil Procedure 17(b) provides:

(b) Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. *The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.* In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28 U.S.C., §§ 754 and 959(a). [Emphasis supplied].

█ In *Barrack*, the Supreme Court held the third sentence of Rule 17(b) and the words therein, namely, "the law of the state in which the district court is held", to refer to the law of the state of the transferor court. *Barrack's* emphasis on looking to the law of the transferor court clearly points this Court, in interpreting the second sentence of Rule 17(b), which is applicable herein in connection with both corporate plaintiffs, toward the conclusion that since both Maryland corporations had the capacity to sue in the Maryland state court in which they instituted this suit, prior to its removal to this Court by the defendant, the requirements of Rule 17(b), insofar as they cross-relate to Section 1404(a), are met. In addition, however, it appears clear that the second sentence of Rule 17(b) "relates only to the capa-

city to sue and be sued and not to the place of suit. Consequently if a corporation can sue, it can be sued anywhere." 2 Barron & Holtzoff (Wright ed.) Federal Practice and Procedure, § 485 p. 40 (1961), citing testimony given during hearings before the Committee on Judiciary of the United States House of Representatives, and other supporting historical references.

█ In summary, plaintiff Lyle's lack of capacity to institute this suit in a Georgia state court on September 30, 1966, is not a bar herein to the transfer defendant seeks. Venue under the applicable statutes also seems clearly to have existed in the proposed transferee court on that date. The date of commencement of this proceeding is the date it was instituted in the Circuit Court for Montgomery County, the state court from which it was removed to this Court by defendant. In Maryland, an action at law is *commenced* by *filing* a declaration. 9B Md.Ann. Code, Maryland Rules of Procedure, Rule 140.[5] Thus, the within proceeding commenced on September 30, 1966. On that day, according to facts stipulated by counsel for both parties, defendant's principal place of business was in Fulton County, Georgia, in the Atlanta Division of the Northern District of Georgia and defendant was doing business in Chatham County, Georgia which county is located within the Savannah Division of the Southern District of Georgia. On October 1, 1966, also according to facts stipulated by counsel for both parties, defendant ceased doing business in the Savannah Division. Since October 1, 1966, defendant concedes that its only business activity in the Savannah Division, or in the Southern District, has been attendance at conferences with the Authority in connection with obtaining final payment from the Authority under the January 27, 1965 contract mentioned earlier in this opinion.

5. Maryland Rule 140 provides:
    a. *Commenced by Filing Declaration.*
    An action at law shall be commenced by filing a declaration, case by con-

sent pursuant to Rule 329 (Special Case by Consent), or other original pleading.

Section 1391(c) of 28 U.S.C. provides:

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Section 1393(a) of 28 U.S.C. provides:

Except as otherwise provided, any civil action, not of a local nature, against a single defendant in a district containing more than one division must be brought in the division where he resides.

Defendant Atlantic was doing business in the Savannah Division when this suit was filed. Thus, the defendant here resided in the Savannah Division on that date, and the requirements of the two statutory provisions are met.

The requirements of Section 1391(c) are also satisfied whether or not Atlantic was doing business in the Savannah Division of the Southern District of Georgia when this suit was commenced, since Atlantic was doing business in that Division of that District in connection with the said contract and subcontracts when the within cause of action arose. Atlantic's doing of business on the date when the cause of action arose, in and of itself, satisfies the venue requirements of the statutes. Snyder v. Eastern Auto Distributor, Inc., 357 F.2d 552 (4th Cir. 1966) cert. denied, 384 U.S. 987, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966); L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (D.Md.1962) (Thomsen, C. J.), followed in Nelson v. Victory Electric Works, Inc., 210 F.Supp. 954 (D.Md.1962) (Northrop, J.) and in Nelson v. Victory Electric Works, Inc., 227 F.Supp. 404, 406 (D.Md. 1964) (Watkins, J.).

There are three federal districts within the State of Georgia, the Northern, Middle and Southern Districts. There are a number of divisions within each of the three districts, including the Atlanta Division within the Northern District, in which the defendant had its principal office, and the Savannah Division within the Southern District, to which transfer is sought herein by defendant. The defendant corporation was qualified to do business throughout the State of Georgia and was doing business in the Southern District of Georgia and in the Savannah Division thereof when the within cause of action arose and also when this suit was instituted. Therefore, this Court does not reach the question of whether it would be legally significant if the defendant corporation, though qualified to do business throughout the State of Georgia, had not, in fact, done business in the Southern District of Georgia and in the Savannah Division thereof on the relevant date or dates.

It is, therefore, this 9th day of November, 1967, by the United States District Court for the District of Maryland, ordered that if defendant shall file within fifteen (15) days from the date hereof an undertaking which includes the provisions specified in this Memorandum and Order, this case shall forthwith be transferred to the United States District Court for the Southern District of Georgia, Savannah Division, without further Order of this Court. Defendant shall pay the costs of this proceeding to date.