**HARDAWAY CONSTRUCTORS, INC., Plaintiff,**

**v.**

**CONESCO INDUSTRIES, LTD., Defendant.**

**Civ. 82–14.**

United States District Court, D. New Jersey.

March 22, 1983.

Paul Lewis, Paramus, N.J., for plaintiff.

Robert B. Turk, West Orange, N.J., for defendant.

## OPINION

BIUNNO, Senior District Judge.

Hardaway is a Georgia corporation that entered into a contract with the Maryland Department of Transportation, State Highway Administration, to build a bridge over the South River in that State.

Conesco, a New Jersey citizen, submitted a proposal to Hardaway to provide "custom forms" for containing and shaping concrete to be poured under water in the formation of the reinforced footings for the bridge. In response, Hardaway sent Conesco its purchase order, which Conesco accepted in New Jersey. The last part of the purchase order sets out printed terms, one of which draws in the plans and specifications for the job.

Hardaway's suit is, in general, for damages largely claimed to be due to delay. As described at argument, Conesco had designed some ingenious forms somewhat like a clamshell, but the engineers were of the view that their approval would have to be conditioned on the achievement of the specified compressive strength of the concrete and on the ability to incorporate complex reinforcing steel to achieve the specified tensile strength.

Presumably, Conesco was unwilling to proceed under those conditions and the exchange went through a series of approaches ending in the supplying of some other design of form. Naturally, the rest of the bridge could not proceed while this went on. Conesco denies fault and counterclaims for sums claimed to be due and unpaid.

This opinion does not address the merits of the dispute; what has been said merely serves to identify and describe it. Rather, it deals with the question whether the case should be here, or whether it should be transferred to the District of Maryland where the bridge, the Department of Transportation (State Highway Administration), an office of the engineers, the plans, and site knowledgeable witnesses are located. The question was raised on the court's initiative after reviewing the file which had come to its attention when defendant filed a motion for summary judgment largely based on the proposition that its contract was made in New Jersey, was for the sale of goods, and that the claim was governed by the Uniform Commercial Code which has been enacted by both jurisdictions. That motion is not decided here, and the case is ordered transferred. The reasons follow.

### A. *Jurisdiction*

Conesco is located here, was served here, and is properly "in court". There is no issue of *in personam* jurisdiction.

Subject matter jurisdiction rests on diversity of citizenship and amount in controversy, 28 U.S.C. § 1332(a), and all the requirements are satisfied.

As a suit for damages for default in performance of a contract, with a denial and counterclaim for the unpaid purchase price, it has all the appearance of a transitory action properly brought in this District, rather than a "local" action that can only be brought in Maryland.

Yet, it has much of the flavor and characteristics of a local action. See the discussion in *Minichiello etc. v. Britt*, 460 F.Supp. 896 (D.N.J.1978), and in *X-Rail*

*Systems, Inc. v. Norfolk & W. Ry. Co.,* 485 F.Supp. 553 (D.N.J., 1980). Whether the action be local or transitory under New Jersey law, assuming the *Erie* doctrine controls, need not be decided. It seems rather obvious that the heart of the dispute, i.e., whether Conesco performed or defaulted, will require some court to consider the plans and specifications, the various designs submitted which were acceptable only with conditions not agreeable to Conesco, and the like. It would be different if the purchase order had been for barrels of 10d box nails, or coils of No. 10 AWG copper wire with 500 volt insulation, or 4' × 8' sheets of ¾" outdoor fir plywood, or any other such item that could be looked at as a "shelf item", or a "staple article of commerce", see *Dawson Chem. Co. v. Rohm & Haas Co.,* 448 U.S. 176, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980).

These were "custom" forms designed for this bridge, and the experience in construction litigation is that to resolve the dispute the fact finder will need to have access to the engineer and perhaps several other outside experts, as well as to the documentary records.

In the initial exposition of Parkinson's Law, it was recorded that for every ship constructed for the British Navy, there was created and accumulated a store of plans, specifications and drawings aggregating a tonnage greater than that of the ship itself, and that even after the ship had served out its useful life, its officers and crew transferred or retired, and the ship itself scrapped, the tonnage of paper continued to survive in the Admiralty, tended to by an army of civil servants in greater number than the officers and crew at the peak of the battle.

So it is with buildings and with bridges. The colloquy at hearing indicates that there is, in Maryland, the body of records that stay with the bridge, the Maryland officials and the engineers who drew the plans and specifications. Where those records and witnesses are seems to the court to be the best place to litigate the dispute, even if the claims be transitory. This is a matter of venue. And, see *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

### B. *Venue*

■ The Supreme Court has explained that the purpose of 28 U.S.C. § 1404(a) [1] is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense". *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945, 950 (1964) *citing Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 1474, 1475, 4 L.Ed.2d 1540, 1545 (1960). The court's discretion in granting a transfer under § 1404(a) is broader than when it exercises its powers under the doctrine of *forum non conveniens. Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). Although a lesser showing of inconvenience is required under the statute, "the principles justifying application of the doctrine ... are still implicit in the language of the section." *Anschell v. Sackheim,* 145 F.Supp. 447 (D.N.J.1956). *See also, Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043 (CA–3 1973) (Gibbons, J.); *All States Freight v. Modarelli,* 196 F.2d 1010 (CA–3 1952); Thus, the three factors of the statute—convenience of parties, and of witnesses, and the interests of justice—can be examined in detail using the Supreme Court's analysis of *forum non conveniens* set down in *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In *Gilbert, supra,* the Court outlined two sets of factors to be examined. These interests were private interests of litigants including:

—plaintiff's choice of forum

—ease of access to sources of proof

—compulsory process for unwilling witnesses and cost of obtaining attendance of unwilling witnesses .

---

**1.** The statute provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." 28 U.S.C. 1404(a).

—enforceability of possible judgment
—obstacles to fair trial (or advantages)
—availability of impleader
—all other problems that make trial easy, expeditious, and inexpensive.

The Court also pronounced a public interest embodied in the doctrine which consisted of:

—administrative difficulties (reflecting a desire to keep litigation in courts with crowded dockets to a minimal level)
—placing the burden of jury duty on those with the closest ties to the action
—local interest in having localized controversies decided at home
—and finally and most significant in the instant case, the court noted that "there is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself." *Id.* at 508–509, 67 S.Ct. at 843.

■ The general rule is that unless the balance is strongly tipped in favor of transfer, the plaintiff's choice of forum should not be disturbed. *Gulf Oil v. Gilbert, supra* at 508, 67 S.Ct. at 843. However, the deference afforded to plaintiff's choice has "reduced value where ... there is an absence of any significant contact by the forum state with the plaintiff or the transactions or conduct underlying the cause of action." *National Surety Corporation v. Robert M. Barton Corp.,* 484 F.Supp. 222, 224 (W.D.Okl.1979) citing *Chicago Rock Island & Pacific R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955), *cert. denied,* 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955) and additional district court cases.

The *Gilbert* criteria were applied to a motion for transfer in a construction case in *Koehring Company v. Hyde Construction Company,* 324 F.2d 295 (CA–5, 1963) (Wisdom, J.). That case concerned the construction of a concrete plant at the erection site of a spillway at Keystone Dam on the Arkansas River in Oklahoma. *Id.* at 295.

After the plant did not meet the standards of the contract the plaintiff, a Mississippi corporation, brought an action in breach of contract against defendant, a Wisconsin corporation, in the Southern District of Mississippi. The defendant's motion for transfer to the Northern District of Oklahoma was denied by the trial court. The Fifth Circuit reversed. The Court noted that the plant was physically in Oklahoma, and "all relevant factors concerning its failure to perform occurred in Oklahoma". *Id.* at 296. Most witnesses lived near the site and a view of the site could only be had in Oklahoma. *Id.* The court also pointed to a disparity in docket crowding. *Id.* Recalling the Seventh Circuit's decision in *Chicago, Rock Island & Pacific Railroad Co. v. Igoe,* 220 F.2d 299 (1955), the *Koehring* court noted that the "interests of justice" should be given paramount importance. 324 F.2d at 297.

In *John W. Johnson v. Atlantic States Construction Co.,* 276 F.Supp. 379 (D.Md. 1967) the district court of Maryland was confronted with a § 1404(a) issue in relation to breach of a construction contract. Plaintiffs were Maryland and D.C. corporations that subcontracted with defendant, a Georgia corporation for the painting of facilities in Savannah, Ga., of the Port Authority. After the case was removed from Maryland state court, defendant successfully urged the court to transfer the case to the District of Georgia. The court noted that Georgia's points of contact [were] much greater and more important than Maryland's. *Id.* at 382. Accordingly, the plaintiff's choice of forum did not control. Defendant's only other contact with Maryland was work in an already completed shopping center and the filing of mechanic liens. Furthermore, defendant's affidavits showed no negotiations occurred in Maryland.

Another construction case involving § 1404(a) was *Vector Company, Inc. v. Urban Systems Develop. Corp.,* 360 F.Supp. 864 (E.D.Tenn.1972). There defendant was a general contractor in two public housing projects in North Carolina.

The court transferred the case to the Western District of North Carolina noting that it was more convenient for witnesses, that all of the operative facts occurred in N.C., and that most law would be that of North Carolina which was better applied by a judge sitting in that state. *Id.* at 866. *See also National Surety Corporation v. Robert M. Barton Corp.*, 484 F.Supp. 222 (W.D.Okl.1979) (case involving default on construction contract had several factors favoring transfer including access to sources of proof, availability of compulsory process for unwilling witnesses and less expense, and events giving rise to transaction occurred in transferee district).[2]

In the instant case the convenience of the parties poses no problem. Plaintiff chose the forum and defendant, a New Jersey corporation, urges the court to maintain the action in New Jersey. It should be noted that the convenience of counsel has been held *not* to bear upon the decision to transfer. *Solomon v. Continental Life Insurance Co.*, 472 F.2d 1043 at 1047 (CA–3, 1973).

The second consideration, the convenience of witnesses is a bit more questionable. Defendant argues that many witnesses will have to travel long distances to either New Jersey or Maryland and that all non-party witnesses either reside or are employed in Texas, Nevada, or New York. Furthermore, defendant urges that two New York witnesses are subject to subpoena only by the New Jersey district court. This argument, however, leaves out the fact that this appears to be a highly technical case in which the Maryland Department of Transportation and its engineer Greiner Co. are both located in Maryland. *See, Raymond International Builders v. Baltimore County Md.*, 45 Md.App. 247, 412 A.2d 1296. (Ct. of Sp.App.1980) *cert. denied,* 449 U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980).

The most important factor in this case is that of the "interest of justice". In terms of access to proof, one can only view this bridge in Maryland. It is not clear from the pleadings where plaintiff's or defendant's records are currently kept. Clearly, much relevant information must be in the possession of Maryland DOT and Greiner. In terms of impleading, it should be noted that the DOT may seek liquidated damages from the plaintiff Hardaway. If this requires judicial intervention it could not occur in New Jersey but could take place in Maryland.

New Jersey has very little, if any, interest in this case. Maryland, on the other hand, has an interest in making sure that the commercial aspects of public construction function smoothly. Defendant argues that because it built and designed the forms in New Jersey, its contacts with Maryland were de minimis. This is not the case, because the work was custom made for a Maryland public project. New Jersey has no more relation to this action than did Mississippi in the *Koehring* case or Maryland in *Johnson* or Tennessee in the *Nector* case. Although the New Jersey defendant has demanded a jury trial, it is the people of Maryland who have a greater interest in this case. New Jersey jurors should not be asked to serve in the adjudication of a case concerning a bridge that they do not use. The bridge was constructed with the tax dollars of Maryland citizens, and federal funds.

Also in the public interest, is the consideration of the administration of justice. The 1982 Administrative Statistics of the Federal Courts show that the workload here is heavier.

There is also an evident error in reporting the vacant judgeship months in this district as 3.2 for 1982 when in fact it was 9.2, and while that vacancy was filled January 3, this year, another one developed in early February and a senior judge has been out ill for some months.

In weighted filings, the statistics which account for complexity of cases, New Jersey had a figure of 480 compared to Maryland's 382. Maryland's lighter docket gives it a 5 month lower median time from

---

**2.** This case also found convenience factors favoring transfer.

filing to disposition than New Jersey. Clearly, the administrative consideration is best served by transfer.

In opposing the suggestion of transfer, considerable reliance is placed on *State Farm, etc., v. Simmons Estate*, 84 N.J. 28, 417 A.2d 488 (1980), which reconsidered the choice-of-law principles articulated in *Buzzone v. Hartford, etc., Co.*, 23 N.J. 447, 129 A.2d 561 (1957).

The argument is misdirected. The *State Farm* and *Buzzone* cases involved issues of coverage under casualty insurance policies of the liability type rather than the indemnity type. Both cases applied the classic guide of "where was the contract made."

The jurisdiction where such an insurance contract is written has special significance for choice-of-law purposes mainly because the Congress has abstained from the exercise of its authority to deal with the subject under the Commerce Power, and has left the matter for the several States for its considerable regulation. See the discussion in *Lamb v. CGLIC*, 509 F.Supp. 560, at 576 (D.N.J., 1980), aff'd. 643 F.2d 108 (CA–3, 1981).

One of the lengthy and penetrating discussions of the choice-of-law problem is found in *Heavner v. Uniroyal*, 63 N.J. 130, 305 A.2d 412 (1973), widely regarded as favoring the "center of gravity", or "most significant relationship" test. That was a case involving a claim of "strict liability" for products put into the stream of commerce, with the specific issue of whose statute of limitations should govern.

Neither *Heavner* nor *State Farm* is controlling here for a number of reasons. One is that, absent a choice by the parties, New Jersey would probably regard the law of Maryland as controlling because the contract is explicitly one of a number entered into for the purpose of building a bridge in Maryland. Maryland statutes, such as Md. Ann.Code, Art. 23, § 140–§ 143 call for design approval by county commissioners there, a basic control which largely rules out the law of any other jurisdiction which may be in conflict.

The Restatement on Conflict of Laws is not too helpful, having been drafted in a form designed to provide great flexibility in deciding choice-of-law questions so that agreement could be reached on these flexible rules. Applying the same flexible rules, which are quite subjective, two jurisdictions can easily come out with results that are poles apart on the same set of facts, depending on the weight given to the many expressed factors.

This is most evident from the breadth of the seven criteria listed in § 6(2). As the comment notes,

"At least some of the factors mentioned in this Subsection will point in opposite directions in all but the simplest case".

Even where local interest is extremely strong, as in the case of an insurance policy to indemnify for the loss by fire of a building on Blackacre, which rather obviously would call for applying the law of the State where Blackacre exists, the Restatement is hedged about with qualifications designed to allow some other outcome in some unforeseen case. See, Restatement § 193. Similarly, with contracts for the rendition of services, § 196, the treatment is superficial in discussing situations involving construction contracts in terms of those involving the providing of labor by an independent contractor. As everyone ought to know, site labor on construction projects is traditionally local labor, so that choice-of-law problems rarely arise for that aspect. What is involved here is more likely to raise choice-of-law problems, but it is not mentioned by the Restatement draftsmen.

■ It is common knowledge of which judicial notice should and will be taken, that contracts directly tied to the construction of significant and essentially long-term structures is an activity that is usually governed by the law of the place where the structure will be built except to the extent that paramount federal law occupies the field under the Supremacy Clause.

Common, fungible goods having broad general standards are a different matter. Lumber, plywood, sheetrock, nails, screws,

tar-paper, sheathing, shingles, roofing, electric wire, sockets and switches, fixtures and bulbs, for example, largely fall into this category. Choice-of-law problems rarely arise because performance is measured against widely recognized commercial standards, so that such disputes as may arise generate questions of fact rather than law.

Structural design, and the propriety of means and methods chosen to achieve a specified result, however, are quite another matter. It is most unusual to have that kind of construction litigation occur anywhere except at the site. Strangely enough, there are few decisions involving this facet. They favor choosing the law of the site.

The scarcity of decisions about choice of law in this field is no doubt due to the fact that the great bulk are resolved by the architect/engineer's disposition commonly called for or, if there is litigation it typically involves the owner and so suit is where the owner and the structure are located.

In this case, the "contract" takes the form of a purchase order sent by Hardaway to Conesco, which accepted it in New Jersey. By traditional, simple tests the contract was "entered into" in New Jersey.

But the "job" to which the concrete forming equipment expressly relates is "Job 641, South River Bridge, Edgewater, Maryland." See Plaintiff's Deposition Exhibit 15 of 6/21/82, handed up during colloquy. Page 7 of the purchase order called for "Detail Drawings To Be Submitted To this Office [Hardaway's] For Approval Prior to Fabrication."

Paragraph 1 of the printed terms following page 7 explicitly provide that

"Seller agrees to manufacture, fabricate, furnish and supply the goods described herein in strict accordance with the plans and specifications set forth in Buyer's contract with the Owner of the project" etc., etc.

Paragraph 2 expressly incorporates by reference the terms and conditions of the Principal Contract.

Since the Owner was the Department of Transportation, State Highway Authority of the State of Maryland it would be quite startling if the principal contract was silent on the application of Maryland law. Even though federal funds were involved along with Maryland funds, it would require a most remarkable state of facts to justify application of any law other than Maryland law, and the court is satisfied that a New Jersey court would so rule in this case in deciding the choice-of-law question.

■ In these circumstances, the court sees no alternative but to order a transfer to the U.S. District Court for the District of Maryland. A careful weighing of all the federal factors applicable to a transfer question, as well as of the forum law here as to choice-of-law, points to a transfer.

No doubt, before the development of "long-arm" concepts for personal service outside the jurisdiction of a State, Hardaway's suit probably could only have been filed in New Jersey. Also, State courts are necessarily limited to either retention, with application of foreign law, or to dismissal for forum non conveniens. There is no state-to-state mechanism for the transfer of cases. At most, some states have allowed filing after the running of the statute of limitations, in cases where an earlier suit was timely filed in another jurisdiction but was dismissed on jurisdictional grounds.

In the federal system, there are no walls to block the boundaries around each District. All the boundaries have doorways, and cases may be transferred from one District to another, even when the sending district had no jurisdiction over the person of the defendant.

Hence, the fact that the suit was properly brought here may be accepted without exploring the question whether it is a local action. The transfer may be made whether the action is properly here, under 28 U.S.C. § 1404(a), or not, under 28 U.S.C. § 1406(a). The common denominator in both sections is the interests of justice, and on all counts they point to a transfer.

Finally, the court is satisfied that the action could have been brought in the District of Maryland. The Maryland long-arm statute allows the exercise of its jurisdiction over a person who transacts business or performs any character of work or service in Maryland, as well as over a person who contracts to supply goods or manufactured products in Maryland. See Md.Ann. Code, 1957, Art. 75, § 96 (1973 1st Spec. Sess., c. 2, § 1).

The activities of Conesco, which made several visits to Maryland to negotiate the contract in suit and entered the State on other occasions connected with the work, clearly meet the due process requirements for service there. See, also, *Snyder v. Hampton Industries*, 521 F.Supp. 130 (D.Md.1981).