NATIONAL PROPERTY INVESTORS
VIII, Plaintiff,

v.

SHELL OIL COMPANY, Hoechst–Celenase Corporation, E.I. DuPont de Nemours & Company, et al., Defendants.

Civ. No. 95–117(WGB).

United States District Court,
D. New Jersey.

Nov. 27, 1995.

Bruce H. Nagel, Nagel, Rice & Dreifuss, Livingston, NJ, for Plaintiff National Properties Investors VIII.

James G. Gardner, Carpenter, Bennett & Morrissey, Newark, NJ, James A. Murphy, John D. Johnson, and McGuire, Woods, Battle & Boothe, L.L.P., Richmond, VA, for Defendant E.I. du Pont de Nemours & Company.

David Katzenstein, Goldfein & Joseph, Princeton, NJ and David W. Feeney, II,

Kasowitz, Hoff, Benson, Torres & Friedman, New York City, for Defendant Hoechst–Celenase Corporation.

Robert J. Kelly, Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, NJ, for Defendant Shell Oil Company.

Kevin Gardner, Connell, Foley & Geiser, Roseland, NJ, for Defendant Vanguard Plastics, Inc.

## OPINION

BASSLER, District Judge:

Defendant E.I. du Pont de Nemours & Company ("Du Pont") moves pursuant to 28 United States Code Section 1404(a) to transfer venue to the United States District Court for the Eastern District of North Carolina. This Court's jurisdiction is pursuant to 28 United States Code Section 1332(a). For the reasons set forth below, Du Pont's motion is **granted** and this case is transferred to the United States District Court for the Eastern District of North Carolina.

### I. BACKGROUND

This lawsuit relates to failures from an allegedly defective polybutylene plumbing system installed in the Huntington Apartments, a 212–unit apartment complex owned by the Plaintiff, National Property Investors VIII ("NPI"). (Complaint at ¶ 3). NPI is a California limited partnership. (*Id.*). The Huntington Apartments complex is located in Morrisville, North Carolina, within the jurisdiction of the United States District Court for the Eastern District of North Carolina. (Affidavit of David M. Freedman at ¶ 2).

The Complaint alleges defects in the Huntington Apartments' plumbing system, which was manufactured from resins supplied by Shell Oil Company ("Shell"), Hoechst–Celenase Chemical Corporation ("H–C") and Du Pont. (Compl. at ¶¶ 13–14). Defendant Vanguard Plastics, Inc. ("Vanguard") allegedly manufactured and/or extruded and sold the polybutylene pipes installed in the Huntington Apartments. (Compl. at ¶ 15).

Du Pont is a Delaware corporation with its principal place of business in Delaware. (Compl. at ¶ 6). H–C is a Delaware corporation with its principal place of business in

New Jersey. (Compl. at ¶ 5). Shell is a Delaware corporation with its principal place of business in Texas. (Compl. at ¶ 4). Vanguard is Pennsylvania corporation. (Compl. at ¶ 7).

NPI seeks to hold Defendants liable for breach of warranty, intentional and negligent misrepresentation, unfair business practices, negligent design and strict products liability. (Compl. at Counts One–Eight).

## II. *DISCUSSION*

### A. *Motion to Transfer Venue*

■ 28 United States Code Section 1404(a) provides:

> For the convenience of the parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of Section 1404(a) is "to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960)); *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F.Supp. 473, 479 (D.N.J.1993).

Since the parties do not contend that the action could not "have been brought" in the Eastern District of North Carolina, the Court does not address that issue in this Opinion.

### 1. *Standard of Review*

■ The decision whether to transfer an action pursuant to Section 1404(a) rests in the Court's discretion and is reviewed for abuse of discretion. *See Lony v. E.I. Du-Pont de Nemours & Co.*, 886 F.2d 628, 631–32 (3d Cir.1989) (decision to grant or deny *forum non conveniens* motion is within sound discretion of trial court). The party seeking transfer of venue bears the burden of establishing that transfer is warranted and must submit "adequate data of record" to facilitate the court's analysis. *Ricoh Co. v. Honeywell, Inc.*, 817 F.Supp. 473, 480 (D.N.J.

1993). Before transferring venue, the district court must articulate specific reasons for its decision. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir.1988); *Ricoh*, 817 F.Supp. at 480.

### 2. *Factors Guiding Court's Discretion*

■ The Court's analysis under Section 1404(a) is flexible and turns on the particular facts of the case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 2243–44, 101 L.Ed.2d 22 (1988). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court listed several factors that guide the Court's decision-making in this area. These factors fall into two categories: (1) the private interests of the litigants; and (2) the public interest in the fair and efficient administration of justice. *Gulf Oil*, 330 U.S. at 508–509, 67 S.Ct. at 843.

The private interest factors are: (1) plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability and cost of compulsory process for unwilling witnesses; (4) obstacles to a fair trial; (5) the possibility of viewing the premises, if viewing the premises would be appropriate to the action; and (6) all other factors relating to the expeditious and efficient adjudication of the dispute. *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843.

The public interest factors are: (1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating localized disputes; and (4) the appropriateness of having the jurisdiction whose law will govern adjudicate the dispute in order to avoid difficult problems in conflicts of laws. *Id.*

The Supreme Court articulated these factors with respect to a motion to dismiss for *forum non conveniens*. Nevertheless, courts routinely look to the *Gulf Oil* factors in deciding a motion to transfer venue under 1404(a). *E.g.*, *Ricoh*, 817 F.Supp. at 479–88. Because transfer of venue is less drastic than dismissal, however, district courts have

broader discretion to transfer venue than to dismiss on *forum non conveniens* grounds. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *All States Freight, Inc. v. Modarelli,* 196 F.2d 1010, 1011 (3d Cir.1952); *Ricoh,* 817 F.Supp. at 479.

### 3. *Weight Accorded Plaintiff's Choice of Forum*

■ As a general matter, plaintiff's choice of forum is given great weight in the Section 1404(a) analysis. *E.g., Lony v. E.I. DuPont de Nemours & Co.,* 886 F.2d 628, 633 (3d Cir.1989). In a motion to transfer venue, however, Plaintiff's choice of forum is not accorded the decisive weight it enjoys under *forum non conveniens. See, e.g., Gundle Lining Constr. Co. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163 (S.D.Tex.1994); *cf. Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981) (district courts given more discretion to transfer under Section 1404(a) that to dismiss on grounds of *forum non conveniens*).

Moreover, when the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight. *Ricoh,* 817 F.Supp. at 481; *Edwards v. Texaco, Inc.,* 702 F.Supp. 101, 103 (E.D.Pa.1988); *Johnston v. Foster–Wheeler Constructors, Inc.,* 158 F.R.D. 496, 505 (M.D.Ala.1994); *S.C. Johnson & Son v. Gillette Co.,* 571 F.Supp. 1185, 1188 (N.D.Ill.1983) ("as a general rule, the preferred forum is that which is the center of gravity of the accused activity").

Furthermore, a plaintiff's choice of a foreign forum is generally accorded less weight that the choice of a home forum. *See Piper,* 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Ricoh,* 817 F.Supp. at 480; *Lony,* 886 F.2d at 633–34; *Vivadent (USA), Inc. v. Darby Dental Supply Company,* 655 F.Supp. 1359, 1360 (D.N.J.1987). Since the rule deferentially viewing plaintiff's choice of forum is premised on the assumption that a home forum is inherently more convenient than a transferee forum, a foreign plaintiff can regain equal footing with a home plaintiff by making a "strong showing" of convenience attaching to the original forum selection. *Lony,* 886 F.2d at 634.

### B. *Private Factors*

### 1. *Plaintiff's Choice of Forum*

■ The Court does not accord great weight to Plaintiff's choice of New Jersey as the forum in which to bring this action, because New Jersey has a tangential relationship to the facts underlying Plaintiff's claims. The operative facts of this action occurred for the most part in North Carolina: the suit concerns a polybutylene system in an apartment in North Carolina; the allegedly defective products failed to perform adequately in North Carolina; the allegedly defective products were sold and installed in North Carolina by North Carolina residents and companies. Moreover, Plaintiff is a California limited partnership that owns a North Carolina apartment building.

Two connections with New Jersey, Plaintiff argues, entitle its choice of forum to deference: (1) H–C maintains its principal place of business in New Jersey; and (2) identical polybutylene pipes and fittings to the ones at issue in this lawsuit have been distributed throughout New Jersey and the United States, not just North Carolina.

That the Defendants may sell their products in states other than North Carolina, including New Jersey, is not a central fact to this lawsuit, *Ricoh,* 817 F.Supp. at 481; *Edwards v. Texaco, Inc.,* 702 F.Supp. 101, 103 (E.D.Pa.1988); *Johnston v. Foster–Wheeler Constructors, Inc.,* 158 F.R.D. 496, 505 (M.D.Ala.1994); *S.C. Johnson & Son v. Gillette Co.,* 571 F.Supp. 1185, 1188 (N.D.Ill. 1983) ("as a general rule, the preferred forum is that which is the center of gravity of the accused activity"), and therefore has little relevance to whether the Court should defer to Plaintiff's choice of forum.

Nor does the fact that H–C maintains its principal place of business in New Jersey constitute a "strong showing," *Lony,* 886 F.2d at 634, that New Jersey is a convenient forum. Accordingly, the Court accords little weight to Plaintiff's choice of New Jersey as the forum in which to litigate these claims.

2. *Relative Ease of Access to Sources of Proof and Access to Unwilling Witnesses*

Transfer to the Eastern District of North Carolina is appropriate because several non-party witnesses are residents of North Carolina who would be amenable to compulsory process in North Carolina, but not New Jersey. *See* Fed.R.Civ.P. 45(e) (non-party may not be held in contempt for failure to obey subpoena requiring non-party to travel to a place more than 100 miles from the place she/he resides). The amenability of potential witnesses to compulsory process is a factor the Court weighs in a Section 1404(a) analysis. *See Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("the amenability of at least seven crucial witnesses to compulsory process in North Carolina and not in New Jersey" weighed in favor of transfer).

DuPont identifies several potential North Carolina non-party witnesses who, because North Carolina is more than 100 miles from Newark, NJ, (*see* Appendix to DuPont's Motion to Transfer Venue at 46 ("App. at ___") (distance from Raleigh to New York, NY is approximately 500 miles)), would not be subject to the compulsory process of this Court. (*See* Memorandum of Law of E.I. DuPont de Nemours and Company in Support of Motion to Transfer Venue at 10–11 (identifying Virginia suppliers of pipes, representatives of North Carolina general contractor overseeing installation of plumbing system, the management of the Huntington Apartments complex, the residents of the complex who witnessed the alleged defects, the North Carolina workers who repaired the allegedly leaky plumbing, local water supply officials and others as potential non-party witnesses in the event of a trial)).

Plaintiff contends that the non-party witnesses identified by DuPont do not have relevant testimony and therefore should not be considered by the Court in deciding whether to transfer the case. The testimony of the non-party witnesses certainly appears relevant to DuPont and also to the Court. (*See* Reply Memorandum of Law of E.I. DuPont de Nemours and Company in Support of Motion to Transfer Venue at 6) (defense intends to raise issue of causation implicating whether faulty installation by plumbers and abnormal levels of chlorination, as opposed to defective product, caused leaks); *see also* Richard B. Schmidt and Carlos Tejada, "Judge Approves $950 Million Settlement of Suit Over Polybutylene Plumbing," *Wall Street Journal*, November 10, 1995 (leaks in polybutylene plumbing caused by intolerance to chlorine); Fed.R.Evid. 401 (relevant evidence is that which tends to make any fact of consequence to the case either more or less probable).

Nor should DuPont be compelled, as Plaintiff contends, to offer the testimony of non-party witnesses through videotape. *See Hotel Constructors, Inc. v. Seagrave Corporation*, 543 F.Supp. 1048, 1051 (N.D.Ill.1982) ("trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured"); *Blender v. Sibley*, 396 F.Supp. 300, 302 (E.D.Pa.1975) (same).

Plaintiff further argues that this action should not be transferred because certain documentary evidence, consisting of previously-produced records and deposition transcripts, is housed in part in New Jersey. (*See* Plaintiff's Memorandum of Law in Opposition to Defendant E.I. Du Pont de Nemours and Company's Motion to Transfer Venue at 8–9 ("Plaintiff's Memo at ___")). Transferring the action to North Carolina, however, does not affect counsel's access to these document depositories. Further, while counsel might be inconvenienced moving the documents from New Jersey to North Carolina in the event of a trial, convenience of counsel is not a factor to be considered in determining whether the transfer venue pursuant to Section 1404(a). *See Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1046 (3d Cir.1973); *Hardaway Constructors v. Conesco Industries*, 583 F.Supp. 617, 621 (D.N.J.1983); *Burstein v. Applied Extrusion Technologies, Inc.*, 829 F.Supp. 106, 112 (D.Del.1992); *In re Complaint of Bankers Trust Co.*, 640 F.Supp. 11, 13 n. 2 (E.D.Pa.1985); *but see* Charles Alan Wright, *Law of Federal Courts* § 44 at 265–66 (4th ed.1983) (criticizing refusal to take into account convenience of counsel).

Finally, Plaintiff argues that several important H–C witnesses reside in New Jersey and therefore would be inconvenienced by a transfer of venue. (Plaintiff's Memo at 3). This argument fails to persuade the Court that venue should not be transferred. First, the convenience of non-party witnesses is accorded greater weight in the Section 1404(a) analysis than party witnesses. *See Aquatic Amusement Associates v. Walt Disney World,* 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *DEV Indus., Inc. v. NPC, Inc.,* 763 F.Supp. 313, 315 (N.D.Ill.1991). Second, the number of potential non-party North Carolina witnesses, and the fact that, unlike party witnesses, Fed.R.Civ.P. 45(c)(3)(A)(ii), non-party witnesses cannot be compelled to testify before this Court, weigh in favor of transferring venue in this case.

### 3. Obstacles to a Fair Trial

Neither party has identified any obstacles to a fair trial in either forum. Accordingly, this factor does not weigh in favor of either forum.

### 4. Jury Viewing of Premises

Plaintiff argues that a jury viewing of the Huntington Apartment complex is unnecessary, because the leaky pipes can be brought to the courtroom for viewing in New Jersey. DuPont argues that a jury might be aided in understanding the facts if they view the plumbing in place.

To the extent that viewing the premises is relevant to the disposition of this case, it would be impracticable to do so if the trial is held in New Jersey. Accordingly, the Court finds that this factor, too, weighs in favor of transfer.

### 5. Other Factors Relating to the Expeditious and Efficient Adjudication of the Dispute

Failure to transfer venue to North Carolina could lead to piecemeal litigation adversely impacting the efficient administration of justice. It does not appear from the record before the Court that the parties involved in the installation and repair of the plumbing system are subject to the personal jurisdiction of this Court. *See International*

*Shoe Company v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (to satisfy due process, defendant must have minimum contacts with forum state so that maintenance of suit does not offend "traditional notions of fair play and substantial justice"). Indeed, the vast majority of contacts identified in the pleadings and submissions of counsel occur in North Carolina.

If the case were to go forward in New Jersey against Shell, H–C and DuPont alone, potentially responsibility parties, such as the parties who installed the plumbing system, could not be impleaded, raising the possibility of a separate lawsuit in North Carolina at the conclusion of the New Jersey trial. *See Fortay v. University of Miami,* 1994 WL 62319 (D.N.J.1994) (transferring venue when retaining matter would lead to "split proceedings" in New Jersey and Miami for those parties not subject to the court's personal jurisdiction). Both the interests of the parties and of the court system are served by transferring venue to a forum in which all potential claims could be adjudicated at once. Therefore, this factor weighs in favor of transfer as well.

### C. Public Factors

### 1. Relative Backlog and Other Administrative Difficulties

The relative backlog and caseloads of the two districts also supports a transfer of venue. *See Solomon,* 472 F.2d at 1047 (fact that District of New Jersey had 353 cases per judge and Middle District of North Carolina had 177 cases per judge weighed in favor of transfer); *Hardaway Constructors, Inc. v. Conesco,* 583 F.Supp. 617, 621 (D.N.J.1983) (transferring venue from New Jersey to Maryland in part because Maryland's docket was "lighter" than New Jersey's). As of September 30, 1994, 5,703 cases were pending in the District of New Jersey, while 1,194 cases were pending in the Eastern District of North Carolina. This translates to 407 pending cases per active District of New Jersey judge to 298 pending cases per active East-

ern District of North Carolina.[1] (App. at 008). Further, as of September 30, 1994, 4.6 percent of civil cases filed in the District of New Jersey had been pending for more than three years compared to 2.8 percent in the Eastern District of North Carolina.[2] Accordingly, this factor weighs in favor of transferring venue to the Eastern District of North Carolina as well.

### 2. The Fairness of Placing the Burdens of Jury Duty and the Local Interest in Adjudicating the Dispute

North Carolina has a greater interest in this action because most of the central facts of the lawsuit occurred there. (*See* Section II(B)(1)). The case involves a leaky plumbing system in a North Carolina apartment complex affecting North Carolina residents, the parties who installed the plumbing systems are North Carolina residents and several non-party witnesses are North Carolina residents. The burden of jury duty should not be placed on citizens with a remote connection to the lawsuit. *Gulf Oil,* 330 U.S. at 508–509, 67 S.Ct. at 843; *Ricoh Co. v. Honeywell, Inc.,* 817 F.Supp. 473, 478 (D.N.J. 1993) ("New Jersey jurors should not be burdened with adjudicating a matter ... stemming from conduct which is/was largely localized in Minnesota and Illinois"). In light of the greater interest North Carolina residents have in this litigation, the burden of jury duty is more fairly placed upon them. Accordingly, this factor weighs in favor of transferring venue.

Plaintiff contends that venue should not be transferred because H–C maintains its principal place of business in New Jersey and New Jersey therefore has a strong interest in deterring its companies from producing deficient products. Applying this logic to a national company like H–C, the District of New Jersey might host every localized dispute involving H–C products. In any event, this single contact fails to alter the fact that North Carolina has a significant interest in adjudicating disputes arising from events occurring within its borders. Accordingly, this factor weighs in favor of transferring venue as well.

### 3. The Appropriateness of Having the Jurisdiction Whose Law Will Govern Adjudicate the Dispute

Transferring this case to the Eastern District of North Carolina would avoid this Court applying unfamiliar law, another factor the Court considers in deciding a Section 1404(a) motion. *See Security Savings Bank v. Green Tree Acceptance, Inc.,* 703 F.Supp. 350, 354 (D.N.J.1989) (transferring venue would avoid "forcing a court wholly unfamiliar with [Minnesota's] laws to apply the same to the instant action").

#### a. Choice of Law [3]

■ A federal court sitting in diversity determines the substantive law to be applied by looking to the choice of law rules of the forum state. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Shields v. Consolidated Rail Corp.,* 810 F.2d 397 (3d Cir.1987).

■ In contract suits, New Jersey follows the Restatement (Second) of Conflict of Laws § 188 (1971), which applies the law of the jurisdiction having the most significant relation and closest contacts with the transaction and the parties. *State Farm Mutual Automobile Ins. v. Estate of Simmons,* 84 N.J. 28, 34, 417 A.2d 488 (1980). The Court evaluates the relevant contacts, such as the domicile of the parties and the places of contracting and

---

**1.** The Court arrived at this number by dividing the total number of pending cases by the number of active judges for each District listed in the Federal Supplement.

**2.** The Court cannot agree with Plaintiff's characterization of the difference between 2.8% and 4.6% as "insignificant." (Plaintiff's Memo at 16). New Jersey's backlog is more than one-and-a-half times the size of the Eastern District of North Carolina's. To call that difference "insig-

nificant" is akin to saying that an 11–foot center would have an "insignificant" advantage in a dunking contest with Patrick Ewing, the New York Knicks basketball star.

**3.** The Court's discussion of choice-of-law is limited to a preliminary determination solely for the purposes of deciding this motion to transfer venue. It is not meant to preclude the Eastern District of North Carolina from reaching a different conclusion.

performance, and assesses them in light of the basic considerations that determine the choice of law. *Id.* at 35, 417 A.2d 488. These concerns include the policies and interests of the affected states, the special concerns that underlay the particular field of law, the protection of reasonable expectations, the need for uniformity and consistency, and the ease in the selection and application of the appropriate law. *Id.*

 In tort cases, New Jersey has adopted a governmental interest analysis regarding choice-of-law questions. *Veazey v. Doremus,* 103 N.J. 244, 247, 510 A.2d 1187 (1986); *Bussell v. DeWalt Products Corp.,* 259 N.J.Super. 499, 513, 614 A.2d 622 (App. Div.1992), *cert. denied,* 133 N.J. 431, 627 A.2d 1137 (1993); *Pancza v. Remco Baby, Inc.,* 761 F.Supp. 1164, 1168 (D.N.J.1991). The first step in the analysis is to determine, on an issue-by-issue basis, whether a conflict exists between the laws of the interested states. *Veazey,* 103 N.J. at 248, 510 A.2d 1187. If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and the parties. *Id.* Consequently, the qualitative, not the quantitative, nature of a state's contacts determines whether its laws apply. *Id.*

 The laws of North Carolina and New Jersey differ with respect to several of the causes of action asserted in Plaintiff's Complaint, thus presenting a genuine conflict. Notably, North Carolina has expressly rejected the doctrine of strict liability in products liability actions. *Warren v. Colombo,* 93 N.C.App. 92, 377 S.E.2d 249 (1989), whereas New Jersey has not. *E.g., Consumers Power Co. v. Curtiss–Wright Corp.,* 780 F.2d 1093 (3d Cir.1986) (applying New Jersey law).

The parties appear to agree that North Carolina law would apply to this action. (*See* Plaintiff's Memo at 17 n. 3). The Court agrees also. Because North Carolina has the greater interest in this litigation, (*see* Section II(C)(2)), North Carolina law would most likely apply to this action. Accordingly, transfer to the Eastern District of North Carolina is appropriate on this basis as well.

### III. CONCLUSION

For the reasons set forth above, the Court grants DuPont's motion to transfer venue to the United States District Court of the Eastern District of North Carolina.

An appropriate Order accompanies this Opinion.

### ORDER

This matter having come before the Court on Defendant E.I. DuPont's ("DuPont") motion to transfer venue to the Eastern District of North Carolina; and

The Court having considered the submissions of counsel and oral argument on behalf of the parties; and

For good cause shown;

It is on this 27th day of November, 1995 ORDERED that:

(1) DuPont's motion to transfer venue to the Eastern District of North Carolina is **granted;** and

(2) This case is **transferred** to the United States District Court for the Eastern District of North Carolina.