Catherine M. CALKINS, Plaintiff,

v.

DOLLARLAND, INC., Howard Kerdeman, and Jerry Witten, Defendants.

No. CIV. A. 99–04441(SSB).

United States District Court, D. New Jersey.

Sept. 26, 2000.

Thomas N. Ganiaris, Cherry Hill, NJ, for Plaintiff.

Mitchell Feigenbaum, Mesirov Gelman Jaffe Cramer & Jamieson, LLP, Cherry Hill, NJ, Edward J. McBride, Jr., Schnader Harrison Segal & Lewis, LLP, Cherry Hill, NJ, for Defendants.

## OPINION ON DEFENDANTS' MOTIONS TO DISMISS AND/OR TRANSFER VENUE

BROTMAN, District Judge.

### I. *INTRODUCTION*

Presently before the Court in this sexual harassment case are defendants' motions to (a) dismiss ten of the eleven counts of the complaint for failure to state a claim; and/or (b) transfer venue of this action to the Eastern District of Pennsylvania. Because portions of plaintiff's complaint state claims upon which relief may be granted, this Court will grant in part and deny in part defendants' motion to dismiss, with leave to amend one count of the complaint. Additionally, because a substantial part of the events giving rise to plaintiff's claim arose in New Jersey, the Court will deny defendants' motion to transfer venue.

### II. *FACTUAL AND PROCEDURAL BACKGROUND*

This matter involves sexual harassment and allied claims brought by plaintiff Catherine Calkins against her former employer, Dollarland, Inc., and two of its managers. Dollarland, a Pennsylvania corporation, is a discount merchandise chain with stores throughout the Delaware Valley region. Calkins worked for Dollarland in eastern Pennsylvania as a retail salesperson, and later as a store manager, from November 1993 to early 1995, when she took a job with a competing chain. In November 1996, she returned to Dollarland as a store manager, and around April 1998 she went to work in the company's Bellmawr, New Jersey, store. Defendant Jerry Witten was a district manager during both of Calkins' stints with the company, and was her direct supervisor for most of her employment, although the parties dispute how

long he remained her supervisor once she transferred to New Jersey. Witten reported to defendant Howard Kerdeman, who was the general manager of Dollarland. Claiming that both Witten and Kerdeman had harassed her and created an intolerable work environment, Calkins resigned from Dollarland in September 1998. Both Witten and Kerdeman deny any harassment.

### A. Witten's Alleged Conduct

Calkins claims that from the beginning of her employment with Dollarland, Witten engaged in crude, offensive behavior and made unwanted advances. She says he often referred to her as a "bitch," "crazy bitch" and "goofy bitch." (Compl. p. 3.) He would tell her she had "nice big boobs" and that she should not wear long blouses so that she could "show off her ass." (Compl. p. 3.) He inquired about her sexual relations and told her she could have really good sex with him. On one occasion, Witten allegedly "told Calkins that he could have licked her belly button inside and out." (Compl. pp. 3–4.) He often told her that he wanted to marry and asked her out, even after she got married in 1994. She claims that he often touched her in offensive ways—including on her back, arms and legs—and would make sexual comments while doing so. Calkins claims that Witten also harassed other female employees, telling obscene jokes in front of them as well as luring them into a back room and trying to kiss them. Witten would encourage an assistant store manager under Calkins' supervision to rub her hands all over each man, and Witten would make "lewd noises" while this was taking place. (Compl. p. 4.) Finally, Calkins maintains, Witten told her that if she had engaged in sex with him, she would have advanced to higher management positions at Dollarland.

### B. Kerdeman's Alleged Conduct

Calkins maintains that she reported Witten's behavior to Kerdeman, who alleg-edly told her to "live with it." (Compl. p. 5.) Moreover, Calkins claims, Kerdeman engaged in some of the same types of behavior. He also would encourage the assistant store manager to rub her hands all over him. Additionally, he would tell obscene jokes and make sexually explicit remarks to Calkins and other female employees, at one point saying to Calkins, "Let me bang you." (Compl. p. 9.) Because she refused his advances, Calkins avers, Kerdeman "embarked upon a campaign of terror" against her. (Compl. p. 9.) He would come into her store and scream, curse, and throw things. (Compl. p. 9.) He criticized her looks, hair, age and clothes, and told Witten and others that he hated Calkins and wanted to make her quit. He also insisted that Witten give Calkins a hard time to make her quit.

The harassment became so bad, Calkins maintains, that she took a job with another company in 1995 to escape the abuse. Kerdeman allegedly visited her at her new place of employment, however, and tried to persuade her to come back: "[h]e said that he would behave and that he would 'keep a leash' on [Witten]." (Compl. p. 10.) Upon her return to Dollarland in November 1996, she maintains, Kerdeman told her new district manager to "give Calkins a hard time." (Compl. p. 10.)

### C. Alleged Conduct of Dollarland Corporate Officers

Calkins maintains that she reported Witten and Kerdeman's behavior to Jeff Pincus, Dollarland's chief executive officer and principal shareholder, and Jeff Mazer, the company controller. The company, which according to Calkins had previously been involved in harassment cases, also allegedly has received reports from two other employees about the conduct of the two men. No investigation or disciplinary action followed, however, and Witten and Kerdeman continued their misconduct, she alleges. Calkins maintains that Dollarland provided inadequate training and had no

mechanisms in place to prevent sexual harassment.

Calkins also claims that once she reported her concerns about Witten and Kerdeman, she was treated differently by her supervisors. They criticized her, whereas previously the had praised her for outstanding work. She was given additional work assignments and treated as though she was the wrongdoer. She was not allowed to pursue her grievance in confidence; instead, other employees learned of her complaints and teased and intimidated her.

### D. The Complaint

Calkins filed an eleven-count complaint with the Superior Court of New Jersey, Camden County, Law Division, on Aug. 18, 1999. She brings common-law claims against both Witten and Kerdeman for harassment, sexual harassment, intentional infliction of emotional distress, and negligent infliction of emotional distress. Additionally, she brings common-law claims against Dollarland for respondeat superior liability and maintenance of a hostile work environment. Finally, Calkins asserts a hostile-environment sex discrimination claim against Dollarland under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5–1. She claims damages for physical injuries, including high blood pressure, as well as mental anguish and emotional distress.

After removing the case to this Court, .defendants on Dec. 2, 1999, moved to dismiss the ten common law claims as well as transfer the case to the Eastern District of Pennsylvania. Calkins' response and defendants' reply brief, as well as certifications by each party, were filed the same day. Accordingly, defendants' motions are now ripe for consideration. Because this Court need not address the sufficiency of plaintiff's claims if it transfers venue to another district, the motion to transfer shall be considered first.

### III. *MOTION TO TRANSFER VENUE*

Pursuant to Federal Rule of Civil Procedure 12(b)(3), defendants raise the defense of improper venue and move that the case be transferred to the Eastern District of Pennsylvania. Under 28 U.S.C. § 1406, a court must dismiss a case laying venue in the wrong district, or, if the interest of justice so requires, transfer the case to another judicial district.[1] Even if venue is proper, a court may transfer the case "[f]or the convenience of the parties [and] in the interest of justice." 28 U.S.C. § 1406. Because the standards for transfer differ depending on whether venue has been laid correctly, this Court must first examine the propriety of venue in New Jersey under the venue provision for diversity cases, 28 U.S.C. § 1391(a).

### A. Propriety of Venue in New Jersey

28 U.S.C. § 1391(a) provides that venue is proper only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." Applying the first criterion, venue would be proper in a Pennsylvania judicial district because all of the defendants are residents of that state.[2] Because venue

---

1. If the case originally could have been brought in another jurisdiction, courts will generally transfer the case to that jurisdiction rather than dismiss it. *See, e.g., Chicosky v. Presbyterian Medical Center,* 979 F.Supp. 316, 321–322 (D.N.J.1997); *LaRose v. Sponco Manufacturing Inc.,* 712 F.Supp. 455 (D.N.J. 1989); *see also* 17 Moore's Federal Practice § 110.01[5][d] (3d ed. 1997) ("[T]he preferred disposition is to transfer the action to a district in which it might have been brought in the first place").

2. Calkins' complaint avers that both Witten and Kerdeman are residents of Springfield, Pennsylvania, and that Dollarland is incorpo-

would be appropriate elsewhere, the propriety of venue in New Jersey cannot be established under the statute's third, personal jurisdiction prong. Thus, venue is properly laid in New Jersey only if "a substantial part of the events or omissions giving rise to the claim" occurred there.

Defendants argue that no substantial part of the events leading up to this case occurred in New Jersey. In their motion brief, they contend that of Calkins' 46 months of employment with Dollarland, 41 were at Pennsylvania stores, and only the last five were at a store in New Jersey. Additionally, defendants certify that while Witten was Calkins' supervisor when she was transferred to the New Jersey store in April 1998, by June 1998 responsibility for her store had been given to another manager. They also aver that Witten never worked on location at Calkins' New Jersey store, and that Kerdeman "was based at all times" in Philadelphia. (Def.'s Certification ¶ 7.) Finally, defendants certify that the three witnesses mentioned in Calkins' complaint, as well as Pincus and Mazer—the officials to whom Calkins allegedly reported the harassment—worked exclusively in Pennsylvania. Calkins' description of her term of employment in New Jersey does not substantially differ from that of the defendants. In her certification, she states that "I worked for Dollarland in New Jersey from early 1998 until September 1998...." (Pl.'s Certification ¶ 4.) With respect to her contact with the defendants in New Jersey, however, she certifies that Witten was her immediate supervisor "up until several weeks" before she quit; that Witten visited her New Jersey store "once to twice each week"; that Kerdeman frequently visited her store, "usually at least once per week"; and that the harassment occurred at the New Jersey store as well as in Pennsylvania. (Pl.'s Certification ¶¶ 5–8.)

This Court finds that a substantial part of the events giving rise to Calkins' claim arose in New Jersey. This conclusion rests on the broad understanding of "substantial" as reflected in the 1990 amendments to the venue statute and as applied by other courts.

The 1990 amendments to 28 U.S.C. § 1391 revised subsections (a)(2) and (b)(2), the venue provision for cases based on a federal question, to provide that venue was proper in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." Judicial Improvements Act of 1990, Pub.L. 101–650, Title III, § 311, 104 Stat. 5114. This language replaced the previous wording of (a)(2) and (b)(2), which had provided that venue was appropriate in a judicial district "in which the claim arose." *See American Cyanamid Co. v. Hammond Lead Prods., Inc.*, 495 F.2d 1183, 1184 (3d Cir.1974) (quoting pre-amendment language). The amendment had the effect of establishing that venue in both diversity and federal question cases could be proper in more than one district, provided that a "substantial part" of the events occurred in more than one district. *See Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994); *Database America, Inc. v. Bellsouth Advertising & Publishing Co.*, 825 F.Supp. 1216, 1224 (D.N.J.1993). Indeed, the commentary to § 1391 notes: "The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too .... even if it is shown that the activities in B were more substantial, or even the most substantial." *See* David D. Siegel, Commentary on 1988 and 1990 Revisions of Section 1391, *in* 28 U.S.C.A. § 1391 (West 1993), at 9.

■ Applying this standard, the Court is satisfied that New Jersey has a substantial connection to Calkins' claim with re-

rated in and maintains its principal place of business in that state. Defendants have not

challenged this description.

spect to all three defendants. Even though most of the alleged misconduct may have occurred in Pennsylvania, Calkins has alleged repeated harassment by both Kerdeman and Witten in New Jersey over a number of months. Other courts have upheld venue where an illegal action was repeated in more than one state and venue was laid in a state that accounted for only a small number of those actions. *See Dorsey v. American Golf Corp.*, 98 F.Supp.2d 812, 816 (E.D.Mich.2000) (holding that venue for disability discrimination claim was proper in district of state where four of 257 defendant golf courses were located); *Gwynn v. Transcor America, Inc.*, 26 F.Supp.2d 1256, 1261–62 (D.Colo. 1998) (holding that venue § 1983 claim was proper in state that was a minor leg of trip during which prisoner allegedly was continuously assaulted and mistreated). Neither the length of Calkins' employment in New Jersey nor the assertion that Witten and Kerdeman were at all times based in Pennsylvania refutes the claim that "substantial activities" occurred in this forum. Additionally, courts have held that the impact of far away acts or omissions, combined with other activities in the forum, is sufficiently substantial to sustain venue. *See Wilson v. Pennsylvania State Police Dep't*, No. CIV.A.94–6547, 1995 WL 129202, at *2–3 (E.D.Pa.1995) (upholding venue in district where plaintiff applied for position, even though vision impairment policy was administered in another forum); *School Dist. v. Pennsylvania Milk Mktg. Bd.*, 877 F.Supp. 245, 249–50 (E.D.Pa.1995) (upholding venue in forum not containing headquarters of board that administered challenged milk pricing system). Although *Wilson* and *School District* involved government agencies, the Court sees no reason why their holdings should not apply in the business context as well. The Dollarland officials, Pincus and Mazer, may never have set foot in Calkins' store, but their alleged failure to follow up on her complaints certainly could be expected to have an impact on the work environment to which she was subjected. That impact, combined with Calkins' other New Jersey contacts with the corporation by virtue of her employment, suffices to establish the propriety of venue with respect to Dollarland.

### B. Transfer of Venue

Because venue is proper in New Jersey with respect to all three defendants, the question of whether to transfer venue is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought." The discussion in Part III.A of this opinion has established that this case could appropriately have been brought in the Eastern District of Pennsylvania; it remains to be determined whether transfer to that forum is in the interests of justice and convenience under § 1404(a).

■ The purpose of § 1404(a) "is to prevent the waste 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.–585*, 364, U.S. 19, 26–27, 364 U.S. 19, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960)); *Hardaway Constr. v. Conesco Indus., Ltd.*, 583 F.Supp. 617, 619 (D.N.J.1983). In enacting § 1404(a), Congress intended to lessen the harsh effects of dismissal of an action under the doctrine of forum non conveniens. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546–47, 99 L.Ed. 789 (1955). Because a motion to transfer an action to a more convenient forum does not result in dismissal of the case, the defendant is required to make "a lesser showing of inconvenience" than would be required for a dismissal at common law. *Id.* Accordingly, federal courts have broader discretion to transfer an action than to dismiss under the doctrine of forum non conveniens. *See id.; All States Freight v.*

*Modarelli,* 196 F.2d 1010, 1011 (3d Cir. 1952); *Rutherford v. Sherburne Corp.,* 616 F.Supp. 1456, 1463 (D.N.J.1985).

■ In ruling on § 1404(a) motions, courts have considered a host of factors that flesh out the considerations enunciated in the statute (convenience of parties, convenience of witnesses, and the interest of justice). The analysis is flexible and must be made on the unique facts of each case. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249–50, 102 S.Ct. 252, 262–63, 70 L.Ed.2d 419 (1981); *Van Dusen,* 376 U.S. at 623, 84 S.Ct. at 812–13. In *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1946), the Supreme Court listed two sets of factors that should be considered in deciding a transfer request.[3] The *Gulf Oil* factors fall into two broad categories. One category is factors relating to the private interests of the parties to the litigation, including: the plaintiff's choice of forum, ease of access to sources of proof, availability of compulsory process over unwilling witnesses, obstacles to a fair trial and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. at 843. The other category consists of factors involving the public interests in administration of the courts and adjudication of cases, including: court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home, and familiarity of the forum court with the applicable law. *See id.* at 508–09, 67 S.Ct. at 843.

■■ As a threshold matter, under the *Gulf Oil* analysis a plaintiff's choice of forum is presumptively correct. *Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. at 265–66. In the Third Circuit, the plaintiff's choice of venue is a "paramount consideration" and should not be lightly disturbed.

*Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). As the moving party in this case, the defendants have the burden of persuasion on their motion to transfer. *See Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir.1973). To overcome the presumption in favor of the plaintiff's choice of forum, the defendant must produce "something more than a mere preponderance of the evidence" in favor of transfer. *Sandvik,* 724 F.Supp. at 307 (quoting *Kisko v. Penn Central Transp. Co.,* 408 F.Supp. 984, 986 (M.D.Pa.1976)).

■ With these principles in mind, the Court is not persuaded that the other private interests tip the balance in favor of transfer. The primary interest at issue in this case is the potential inconvenience to the witnesses, including the parties, of traveling to the federal courthouse in Camden. However, "[a] court will not grant a transfer simply because the transferee court is more convenient for the defendants.... If the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed." *Market Transition Facility v. Twena,* 941 F.Supp. 462, 467 (D.N.J.1996) (quoting *Ballard Medical Products v. Concord Laboratories, Inc.,* 700 F.Supp. 796, 801 (D.Del.1988)). Defendants reside in Springfield, Pennsylvania, just west of Philadelphia; Calkins lives in Camden County, New Jersey. One side will have to travel farther than the other regardless of the forum, but given the short distance between the two fora, there is only a negligible distance in terms of convenience. *See, e.g., Bevil v. Smit Americas,* 883 F.Supp. 168, 170 (S.D.Tex.1995) (denying motion to transfer to courthouse 50 miles away because of minimal inconvenience "in this age of convenient travel, discovery, trial testimony preservation, and communi-

---

**3.** Although *Gulf Oil* involved a motion to dismiss under the doctrine of forum non conveniens, courts have routinely looked to the case for guidance in § 1404(a) matters. *See, e.g.,*
*Piper Aircraft,* 454 U.S. at 255–60, 102 S.Ct. at 265, 268; *Sandvik, Inc. v. Continental Ins. Co.,* 724 F.Supp. 303, 307–13 (D.N.J.1989); *Hardaway,* 583 F.Supp. at 619–623.

cation"); *Market Transition,* 941 F.Supp. at 468 (denying motion to transfer from Newark to Brooklyn); *Standard v. Stoll Packing Corp.,* 210 F.Supp. 749, 750 (M.D.Pa.1962) (denying motion to transfer, "[c]onsidering the proximity of Pittsburgh and Harrisburg"). Moreover, Dollarland maintains a presence in New Jersey, Witten and Kerdeman's jobs have previously brought them to the state, and the defendants do not assert that litigating before this court would impose any physical or financial hardship. The Court also notes, with respect to the interest in compelling attendance of witnesses, that the Philadelphia area is within the Court's subpoena power. *See* Fed.R.Civ.P. 45(b)(2). Finally, defendants have not alleged that they would be unable to receive a fair trial in New Jersey or that any "practical problems" exist that dictate transfer.

Nor do any of the public interests tip the balance in favor of transfer. Defendants have not alleged that transfer is preferable because of court congestion or other administrative difficulties in the District of New Jersey. Because this case involves allegations of misconduct against a Pennsylvania corporation and two residents of the state, Pennsylvania does have an interest in adjudicating the dispute. However, New Jersey has no less an interest in vindicating the rights of one of its residents. Finally, while familiarity of the forum court with the applicable law is a consideration, it is not enough that a court might have to apply another jurisdiction's law. *See Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.,* 847 F.Supp. 1244, 1247 (D.N.J.1994). This court is regularly called upon to apply Pennsylvania

law. *See id.* Given that the analysis under § 1404(a) favors retaining this case in the District of New Jersey, defendants' motion to transfer venue will be denied.

## IV. *MOTION TO DISMISS*

Having declined to transfer venue of this case to the Eastern District of Pennsylvania, the Court must now determine whether to dismiss Calkins' common-law claims against defendants, which would leave her to pursue only a statutory cause of action.

### A. Legal Standard

■ In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must consider only those facts alleged in the complaint and accept all of the allegations as true. *See ALA v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).[4] The Court cannot dismiss a plaintiff's complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir. 1984). While the rules do not dictate that a claim set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Schanzer v. Rutgers Univ.,* 934 F.Supp. 669, 673 (D.N.J.1996).

The court also notes at the outset that it is unclear whether Pennsylvania or New

---

4. Calkins contends that by submitting a certification in support of their motion, defendants have introduced extrinsic evidence and thereby converted the motion to dismiss into a motion for summary judgment. Under the Federal Rules of Civil Procedure, where a party attaches materials outside the pleadings to a motion to dismiss, the motion may be converted into a motion for summary judgment. Fed.R.Civ.P. 12(c). Whether to treat the motion as a motion for summary judgment by considering the outside materials is a matter of discretion for the court. *See Brennan,* 850 F.Supp. at 335; *Wiley v. Hughes Capital Corp.,* 746 F.Supp. 1264, 1275 (D.N.J. 1990). In this case, because both parties' certifications primarily address the venue issue and provide little factual development that would be relevant to a decision on summary judgment, the Court will treat the motion as a motion to dismiss.

Jersey law will be applied to the case. The parties have not briefed the issue, and a determination on choice of law would be premature given that factual issues exist as to whether and where the harassment occurred. *See Brennan v. National Tel. Directory Corp.*, 850 F.Supp. 331, 340 (E.D.Pa.1994). Thus, in analyzing Calkins' claims at the stage of a motion to dismiss, the court will consider the law of both states to determine whether the complaint states cognizable bases for recovery.

## B. Plaintiff's Claims

### 1. *Claims for Intentional Harassment, Sexual Harassment and Retaliation*

Defendants first move to dismiss counts one, two, five, six and nine of Calkins' complaint on the ground that they are preempted by the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5. Counts one and five allege that Witten and Kerdeman, respectively, intentionally harassed Calkins. Counts two and six alleged that Witten and Kerdeman, respectively, sexually harassed Calkins. Count nine is a claim against Dollarland for retaliation and maintenance of a hostile work environment. Calkins maintains that she "is allowed to pursue independent actions to vindicate particular interests in addition to ... those sought to be protected" by the New Jersey statute. (Pl.'s Mem. Opp. Mot. Dismiss at 10.)

Both parties cite *Caldwell v. KFC Corp.*, 958 F.Supp. 962 (D.N.J.1997), in support of their positions. In *Caldwell*, this Court, following the guidance of the New Jersey state courts, held that NJLAD did not supplant a common-claim for offensive-touching battery. *See id.* at 969 (citing *Wilson v. Parisi*, 268 N.J.Super. 213, 219, 633 A.2d 113, 115 (1993)). Yet, as defendants point out, the Court in *Caldwell* also dismissed a wrongful termination claim as precluded by NJLAD. *See Caldwell*, 958 F.Supp. at 970. The disparate treatment of the two claims lies in a proper understanding of the pre-emption language of the NJLAD: "Nothing herein contained shall bar, exclude or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against specific relief from any unlawful employment practice or unlawful discrimination." N.J. Stat. Ann. 10:5–27. The New Jersey Supreme Court has explained that while the statute allows "independent" actions to go forward, claims based on interests already protected by the NJLAD are unnecessary. *See Shaner v. Horizon Bancorp*, 116 N.J. 433, 454, 561 A.2d 1130, 1141 (1989) ("[I]t might be unnecessary to recognize or create a [cause of action] to vindicate substantially the same rights and provide similar relief.... [A] plaintiff ... could pursue an independent action ... to vindicate particular interests in addition to or aside from those sought to be protected by a LAD action."). In *Butler v. Sherman, Silverstein & Kohl, P.C.*, 755 F.Supp. 1259 (D.N.J.1990), this Court interpreted *Shaner* to preclude common-law causes of action where the NJLAD provides a remedy. *See Butler*, 755 F.Supp. at 1265 ("Because there already exists a statutory remedy for plaintiff, it would be inappropriate for this court to extend New Jersey common law in this case."). Thus, to the extent that Calkins' harassment, sexual harassment and retaliation claims address interests encompassed by NJLAD, they are precluded under New Jersey law.

Calkins argues that even if the five claims are barred under NJLAD, count nine, which alleges retaliation and maintenance of a hostile work environment on the part of Dollarland, ought to be preserved in the event that Pennsylvania law applies. The Court first notes that should this argument prevail, all of Calkins' claims, not just count nine, could be preserved for consideration under Pennsylvania law. The argument is ultimately unavailing, however, because the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. tit. 43, §§ 951–963, operates similarly to the NJLAD to preclude many common-law claims. *See Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 88–89, 559

A.2d 917, 918–919 (1989) (holding that discrimination claims, including sexual harassment, must be brought under the PHRA); *see also Butler*, 755 F.Supp. at 1263 ("Courts have not recognized a common law tort cause of action where a remedy exists under the [PHRA].") (citing *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 912 (3d Cir.1982); *Deramo v. Consolidated Rail Corp.*, 607 F.Supp. 100 (E.D.Pa.1985)).

▮▮▮ Applying the law of both Pennsylvania and New Jersey, the Court finds that Calkins' claims against Witten and Kerdeman for sexual harassment are clearly subsumed under the remedies provided by the NJLAD and PHRA. Likewise, Calkins' claim against Dollarland for retaliation and maintenance of a hostile work environment is precluded; both states' statutes contemplate employer liability for acts that further sexual harassment in the workplace.[5] Accordingly, counts two, six and nine of the complaint will be dismissed.

▮▮▮ Counts one and five require separate treatment. While these claims are styled as "intentional harassment" causes of action, "it is well settled that to survive a motion to dismiss, the pleading need not correctly categorize legal theories giving rise to the claims, and the court is under a duty to examine the pleadings to determine if the allegations provide for relief under any theory." *Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.*, 801 F.Supp. 1450, 1460 (E.D.Pa.1992) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure, § 1357, at 337 (1990)). As Calkins notes in her motion brief, battery, the harmful or offensive touching of a person without her consent, *Caldwell*, 958

F.Supp. at 970, is not subsumed under the NJLAD. Count one alleges that Witten would offensively touch Calkins on the back, arms and legs. Thus, Calkins has effectively stated a valid cause of action for battery. Accordingly, the Court will grant Calkins leave to amend count one of the complaint to allege battery. Count five, because it does not allege offensive touching and cannot be construed as a claim for battery, will be dismissed.

### 2. *Claims for Intentional Infliction of Emotional Distress*

Defendants next move to dismiss counts three and seven, which allege intentional infliction of emotional distress on the part of Witten and Kerdeman, respectively. They argue that Calkins has not alleged sufficiently outrageous conduct to maintain such claims.

▮▮▮ Both New Jersey and Pennsylvania employ the definition of the Restatement (Second) of Torts for the tort of intentional infliction of emotional distress. *See Taylor v. Metzger*, 152 N.J. 490, 509, 706 A.2d 685, 694 (1998); *Hoy v. Angelone*, 456 Pa.Super. 596, 610, 691 A.2d 476, 482 (1997), *aff'd*, 554 Pa. 134, 720 A.2d 745 (1998).[6] In order to state a claim for this cause of action, the plaintiff must plead that defendant's conduct: (1) was intentional or reckless; (2) was extreme or dangerous; (3) actually caused the distress; and (4) caused distress that was severe. *See* Restatement (Second) of Torts § 46; *Regan*, 36 F.Supp.2d at 251; *Taylor*, 152 N.J. at 508, 706 A.2d at 693. Defendants do not appear to dispute that Calkins has sufficiently alleged intentional or reckless conduct and severe distress. Rather, they

---

5. Both the NJLAD and PHRA explicitly prohibit discriminatory conduct by employers. *See* N.J. Stat. Ann. § 10:5–12(a); Pa. Stat. Ann. tit. 43, § 955(a).

6. While the Pennsylvania Supreme Court has never expressly recognized an action for intentional infliction of emotional distress, a number of federal court decisions in the Third Circuit have held that the tort does exist under Pennsylvania law. *See, e.g., Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir.1979); *Regan v. Township of Lower Merion*, 36 F.Supp.2d 245, 250 (E.D.Pa.1999); *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 311 (M.D.Pa.1988).

question the character of the conduct, citing the Restatement: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d.

Defendants rightly note that "it is extremely rare to find conduct in the employment context which will rise to the level of outrageousness necessary to provide a basis for recovery." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988); *Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 427 (D.N.J.1994). In *Bishop,* however, this Court, while skeptical of the plaintiff's ability to meet the high standard for an employment-related intentional infliction of emotional distress claim, determined that the plaintiff had alleged facts sufficient to survive a motion to dismiss. *See id.* at 428. The plaintiff in *Bishop* contended that her supervisors had forced her to return to work two weeks after cancer surgery, refused to give her time for chemotherapy, excluded her from corporate opportunities and made negative comments about her cancer at performance evaluations over a period of several years. *See id.* at 419–420. Calkins has similarly alleged a continuous pattern of intolerable conduct. The Court also notes that while liability does not ordinarily extend to mere insults or indignities, *see* Restatement (Second) of Torts § 46, cmt. d, such comments can take on a more distressing character when uttered by a supervisor or co-employee in the workplace. *See Wigginton v. Servidio,* 324 N.J.Super. 114, 131, 734 A.2d 798, 807 (1999); *see also Taylor,* 152 N.J. at 509, 706 A.2d at 694. While Calkins still must convince the fact-finder of the outrageousness of Witten and Kerdeman's conduct, she has stated a claim for intentional inflic-

tion of emotional distress under New Jersey law.

As to Pennsylvania law regarding the intentional infliction tort, the cases have largely tracked those in New Jersey. *See Bishop,* 864 F.Supp. at 427; *Cautilli v. GAF Corp.,* 531 F.Supp. 71, 72–73 (E.D.Pa.1982). One nuance is that, as a general rule, sexual harassment alone does not constitute sufficiently outrageous behavior. *See Hoy,* 554 Pa. at 151, 720 A.2d at 754. However, courts applying Pennsylvania law have found outrageous conduct where a supervisor both sexually harassed and retaliated against an employee. *See Bowersox,* 677 F.Supp. at 311 (holding that plaintiff stated claim where she alleged that defendant assigned burdensome tasks, followed her throughout the workplace and withheld information after she refused his advances); *Shaffer v. National Can Corp.,* 565 F.Supp. 909, 910–13 (E.D.Pa.1983) (refusing to dismiss case where defendant allegedly harassed plaintiff, then excluded her from luncheons and alternately ignored and mistreated her). Because Calkins alleges that Witten denied her advancement within Dollarland and Kerdeman also retaliated against her, Calkins has a cause of action under Pennsylvania law as well.[7] Because Calkins states a claim for intentional infliction of emotional distress regardless of the law to be applied, the Court will not dismiss counts three and seven of the complaint.

### 3. Claims for Negligent Infliction of Emotional Distress

Defendants next move to dismiss counts four and eight, which allege negligent infliction of emotional distress on the part of Witten and Kerdeman, respectively. Defendants contend that these claims are precluded by the framework for workers compensation. The New Jersey workmen's compensation statute bars claims for all but the intentional wrongdoing of fellow

---

7. As discussed below in Part IV.B.3 of this opinion, Calkins' claim for intentional infliction of emotional distress would also not be

barred by the Pennsylvania workers compensation statute.

employees. *See* N.J. Stat. Ann. § 34:15–8; *see also Ditzel v. University of Medicine and Dentistry,* 962 F.Supp. 595, 608 (D.N.J.1997) (holding that employee's claim for negligent infliction of emotional distress was barred by Worker's Compensation Act). Accordingly, Calkins' negligence action fails to state a claim under New Jersey law.

■ Pennsylvania's workers compensation statute operates somewhat differently. Rather than distinguish between intentional and other forms of wrongdoing, it provides that workmen's compensation is the exclusive remedy for any "injury to an employee ... arising in the course of his employment and related thereto...." Pa. Stat. Ann. tit. 77, § 411(1). It also lists the following exception to that exclusivity provision:

> The term "injury arising in the course of employment" ... shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment; but shall include all other injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer....

*Id.* Both Pennsylvania and federal courts have interpreted these provisions as exempting from the preclusive effect of the statute claims of intentional and negligent infliction of emotional distress that arise from workplace sexual harassment. *See Garvey v. Dickinson College,* 761 F.Supp. 1175, 1191–92 (M.D.Pa.1991); *Schweitzer v. Rockwell Int'l,* 402 Pa.Super. 34, 586 A.2d 383 (1990). Thus, Calkins' negligence claims are not barred under the Pennsylvania workers compensation statute. However, the defendants contend that even if such claims are cognizable, the facts as alleged by Calkins do not support an action for negligent infliction of emotional distress.

■ To state a claim for negligent infliction under Pennsylvania law, a plaintiff must show one of the following four elements: (1) that the defendant had a contractual or fiduciary duty toward the plaintiff; (2) that the plaintiff suffered a physical impact; (3) that the plaintiff was in a "zone of danger" and at risk of an immediate physical injury; or (4) that the plaintiff had a contemporaneous perception of tortious injury to a close relative. *See Doe v. Philadelphia Community Health Altern. AIDS Task Force,* 745 A.2d 25, 27 (Pa.Super.2000); *Brown v. Philadelphia College of Osteopathic Medicine,* 449 Pa.Super. 667, 674 A.2d 1130 (1996). "Physical impact" appears the most apposite here. While courts have made clear that "physical impact" does not include emotional trauma such as fright and nervous shock, *see, e.g., Simmons v. Pacor, Inc.,* 543 Pa. 664, 676–77, 674 A.2d 232, 238 (1996), they have found allegations of impact sufficient to survive a motion to dismiss in a variety of circumstances. *See Howard v. United States,* Civ. No. 99–3865, 2000 WL 1272590 (E.D.Pa.2000) (skin rashes and aggravation of lupus condition); *Lujan v. Mansmann,* 956 F.Supp. 1218 (E.D.Pa.1997) (plaintiff alleged unspecified "physical injuries"); *Stoddard v. Davidson,* 355 Pa.Super. 262, 513 A.2d 419 (1986) (jarring and jostling of automobile when it struck corpse). In this case, Calkins has alleged that Witten and Kerdeman's conduct caused work-related stress, including high blood pressure that required medication and doctor's visits. In light of the case law, the Court finds that this is sufficient physical impact to state a claim for negligent infliction of emotional distress under Pennsylvania law. Because Pennsylvania law may be applied to this matter, the court will decline to dismiss counts four and eight of the complaint.

### 4. *Respondeat Superior Claim*

Finally, defendants move to dismiss count eleven, which seeks to hold Dollarland liable for the tortious acts of its employees under a theory of respondeat superior. Defendants argue that this is a

superfluous claim which states not a separate cause of action but merely a theory of liability inherent in count ten, Calkins' hostile-environment claim against Dollarland under NJLAD. Calkins apparently does not dispute defendants' contention, as her motion brief makes no mention of count eleven. In any case, claims of hostile-environment harassment under NJLAD are grounded in a theory of vicarious liability, *see Lehmann v. Toys 'R' Us,* 132 N.J. 587, 618–619, 626 A.2d 445, 460–61 (1993), as are, of course, respondeat superior claims. As such, count eleven is redundant and will be dismissed. *See, e.g., Sheehan v. Anderson,* No. Civ.A. 98–5516, 1999 WL 601013 (E.D.Pa.1999) (dismissing redundant claim); *Belmont Holdings Corp. v. Unicare Life & Health Ins. Co.,* No. CIV. A. 98–2365, 1999 WL 124389 (E.D.Pa.1999) (same).[8]

## V. CONCLUSION

For the reasons stated herein, defendants' motion to transfer venue is denied, and defendant's motion to dismiss is granted in part and denied in part. Counts two, five, six, nine, and eleven will be dismissed without prejudice. Plaintiff will be granted leave to amend count one of the complaint. The Court will enter an appropriate order.

---

8. The Court need not discuss whether Calkins should be allowed to amend the complaint to state a vicarious liability claim against Dollarland under Pennsylvania law, as Calkins has not pursued the required administrative remedies under the PHRA. *See Clay,* 522 Pa. at 89–90, 559 A.2d at 918–919.