**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 922 Petitioner**

v.

**John ASHCROFT, Attorney General, U.S. Department of Justice Respondent**

No. 4:03–MC–00003 GTE.

United States District Court,
E.D. Arkansas,
Western Division.

Nov. 3, 2003.

James Edgar Nickels, Attorney at Law, North Little Rock, AR, for Local 922 American Federation of Government Employees, petitioner.

Gwendolyn Dewees Hodge, U.S. Attorney's Office, Eastern District of Arkansas, Little Rock, AR, for Department of Justice, John Ashcroft, Attorney General, United States Bureau of Prisons, Federal Correctional Institution, Forrest City, Arkansas, Ron Thompson, respondents.

### ORDER

EISELE, District Judge.

This miscellaneous case is before the Court on Petitioner's Motion for Order Compelling Witness to Obey Subpoena. On October 2, 2003, the Court entered an Order inviting more briefing. That briefing has now been filed, and the Court is prepared to rule.

### FACTUAL BACKGROUND

On March 9, 1998, the American Federation of Government Employees, Local 922 ("the Union") and the Bureau of Prisons, Department of Justice ("the Agency") entered into a written contract outlining the terms of labor/management relations. (The contract, titled "Master Agreement" is attached as Exhibit 1 to Petitioner's motion). The contract contains an arbitration provision providing detailed proce-

dures for either party to submit an issue to arbitration. (See Article 32 of the Master Agreement, Exhibit 1).

A dispute arose between the Union and the Agency involving the interpretation of the collective bargaining agreement. Director Ron Thompson, the South Central Regional Director for the Agency, denied a grievance filed by the Union. In a three-page letter, Director Thompson concluded that the Agency had not violated the Master Agreement or the Supplemental Agreement. (Exhibit 3 to Petitioner's motion). On January 31, 2002, pursuant to the terms of the Master Agreement, the Union challenged Director's Thompson denial of the grievance by requesting arbitration. Louis Riddle was chosen to arbitrate the matter. Arbitrator Riddle is holding hearings on the dispute in Forrest City, Arkansas.

On February 3, 2003, Arbitrator Riddle issued a subpoena to the Agency, directing it to produce Director Thompson for testimony in the arbitration proceeding. The Agency and Director Thompson have refused to obey the subpoena. Arbitrator Riddle postponed the arbitration hearing until the issues pertaining to his power to issue subpoenas could be resolved.

At issue is whether the Arbitrator in the underlying arbitration, a proceeding pursuant to the Civil Service Reform Act, has the authority to subpoena Director Ron Thompson to appear and testify in an arbitration hearing being held in Forrest City, Arkansas. Mr. Thompson resides and works in Dallas, Texas.

Respondents deny that the arbitrator has the power to issue subpoenas and assuming he does, claims the subpoena in question is invalid because it fails to comply with Rule 45 of the Federal Rules of Civil Procedure. Respondents further claim that Director Thompson lacks personal knowledge of the matters in dispute.

## AUTHORITY TO ISSUE SUBPOENAS

In 1978, Congress enacted the Civil Service Reform Act ("CSRA"), which "comprehensively overhauled the civil service system," *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985). In Title VII of the CSRA, commonly known as the Federal Service Labor–Management Relations Act, 5 U.S.C. §§ 7101–35 ("FSLMRA"), Congress restructured labor management relations in the federal government. *National Treasury Employees Union v. FLRA*, 691 F.2d 553, 554 (D.C.Cir.1982).

The FSLMRA, in providing for grievance procedures, requires that "any collective bargaining agreement shall provide procedures for the settlement of grievances" and that those procedures "shall be the exclusive administrative procedures for resolving grievances" within the coverage of the agreement. 5 U.S.C. § 7121(a)(1). Any negotiated grievance procedure shall be "fair and simple,"; "provide for expeditious processing"; and permit either the exclusive representative or the agency to invoke binding arbitration with respect to any grievance not satisfactorily settled. 5 U.S.C. § 7121(b)(1). The statute does not explicitly state that an arbitrator shall have subpoena powers. It arguably relies upon the collective bargaining agreement itself to spell out the available procedures.

Because the Master Agreement in question does not specifically provide arbitrators with the authority to issue subpoenas, Respondent contends that Arbitrator Riddle lacks any subpoena authority. While the Master Agreement does not specifically grant subpoena powers to the arbitrator, it does provide that the parties shall be permitted to produce witnesses at the hearing. The Agreement further obligates the Agency to pay travel and per diem expenses for certain employee witnesses.

Arguably, implicit in the right to produce witnesses at the hearing is the right to compel their attendance, particularly the Agency's own employees.[1]

Other provisions of the FSLMRA provide for the right to issue subpoenas. For example, § 7132 gives "[a]ny member of the Authority, the General Counsel, or the Panel, any administrative law judge appointed by the Authority ..." the authority to issue subpoenas requiring the attendance and testimony from witnesses from any place in the United States. The provision further requires that when an issue concerning the failure to comply with such a subpoena arises, that issue shall be resolved by the United States District Court for the judicial district in which the person to whom the subpoena is addressed or is served and that Court "may issue an order requiring such person to appear at any designated place to testify or to produce documentary or other evidence."[2] 5 U.S.C. § 7132(b).

The Merit Systems Protection Board is statutorily authorized to issue subpoenas and to seek their enforcement in a United States District Court. Title 5 U.S.C. § 1204(b)(2) provides:

> Any member of the Board, any administrative law judge appointed by the Board under section 3105, and any employee of the Board designated by the Board may, with respect to any individual -

> (A) issue subpoenas requiring the attendance and presentation of testimony of such individual . . .

Upon application of the Board, a United States District Court may issue an order requiring such person to appear at a designated place to testify. 5 U.S.C. § 1204(c).

The Merit Systems Protection Board ("MSPB") may be utilized in certain instances by federal employees as an alternative to binding arbitration following grievance procedures. Under the CSRA, a federal employee who is a member of a federal employees' labor union may challenge an agency disciplinary action either by utilizing the grievance and arbitration procedure provided for in the collective bargaining agreement between the agency and the union, or alternatively, the employee may challenge the disciplinary action by appealing the agency's decision to the MSPB. 5 U.S.C. § 7513(d).[3]

Petitioner argues that the Supreme Court's decision in *Cornelius v. Nutt*, 472 U.S. 648, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985), supports the conclusion that Congress intended for arbitrators to have subpoena powers equal to the MSPB. In *Cornelius*, the Court addressed whether the statutory standard applied by the MSPB must also be applied by arbitrators of adverse action cases. Finding that "Congress clearly intended that an arbitrator would apply the same substantive rules as the Board does in reviewing an agency

---

1. The narrow issue presented by the present controversy is whether an arbitrator conducting arbitration pursuant to a collective bargaining agreement required by § 7121 may compel a party to the arbitration to produce one of its own officers or employees as a witness. The broader issue of whether an arbitrator would have the authority to subpoena third-party witnesses is not presented by the present dispute.

2. In fact, the parties initially agreed that Arbitrator Riddle had the authority to issue the

subpoena in question by virtue of this provision, but the Agency filed a subsequent brief contending that the provision was limited and did not apply to binding arbitration being conducted pursuant to § 7121 and a collective bargaining agreement.

3. There is no indication that the Union would have the right to a proceeding before the MSPB to resolve the present dispute, which involves training, rather than an adverse employment action.

disciplinary decision," the Court concluded that Congress intended for arbitration to be on exactly the same footing as MSPB hearings. *Cornelius,* 472 U.S. at 660, 105 S.Ct. 2882. The Court stated:

> In addition, Congress made arbitral decisions subject to judicial review "in the same manner and under the same conditions as if the matter had been decided by the Board," 5 U.S.C. § 7121(f), expressly "to assure conformity between the decisions of arbitrators with those of the Merit Systems Protection Board." S.Rep. No. 95–969, p. 111 (1978).

*Cornelius,* at 661 n. 16, 105 S.Ct. 2882.

Petitioner contends that *Cornelius* supports the conclusion that Congress intended for arbitrators conducting binding arbitration provided for in a collective bargaining agreement required by § 7121 to have subpoena power equivalent to that of the MSPB. If this were the type of arbitration proceeding which could also be heard by the MSPB at the Union's election, then *Cornelius* would be more on point. It appears, however, that the Union does not have that option in the underlying dispute in this case. On the other hand, it seems unlikely that Congress, having acted to provide unions with the right to initiate binding arbitration with their particular federal agency, would have intended the arbitrator to have no right to compel witnesses or parties to attend the arbitration.

Petitioner also relies upon a case from the Seventh Circuit, which considers an arbitrator's subpoena power in the context of the Labor Management Relations Act rather than the FSLMRA. There the court noted:

> A collective bargaining agreement that requires arbitration is powerless if the parties to the arbitration cannot present evidence in the form of third person testimony or documents possessed by third parties. Enforcement of an agree-

ment to arbitrate cannot provide the "necessary legal remedy" if the parties to the arbitration have no means of securing valuable evidence other than their own testimony....

> Suits for enforcement of an arbitration subpoena, on the other hand, have a great impact on the arbitration process and are necessary to the purpose of enforcing the agreement to arbitrate. It is therefore appropriate to apply the reach of federal common law to ensure that such subpoenas do not go unenforced.

*Teamsters Nat. Automotive Transporters Industry Negotiating Committee v. Troha,* 328 F.3d 325, 330 (7th Cir.2003). An agreement to arbitrate is even less meaningful if the arbitrator cannot compel the parties before it to produce their employees to provide testimony.

In *Teamsters,* the Seventh Circuit found that the reasoning behind the Federal Arbitration Act ("FAA"), although not applicable to the case, was "instructive in fashioning federal common law." *Id.* The FAA provides that in an arbitration covered by the FAA an arbitrator may issue a subpoena, and the United States District Court for the district in which the arbitration is being held may enforce the subpoena. 9 U.S.C. § 7. The *Teamsters* court found that "the same principles underlying the Congressional decision to create an enforcement mechanism for arbitration subpoenas under the FAA apply to the arbitrations pursuant to collective bargaining agreements even when those arbitrations do not fall within the application of the FAA." *Id.,* 328 F.3d at 331. *See also United Paperworkers Intern'l Union v. Misco, Inc.,* 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)("Federal courts have often looked to the FAA for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the

Labor Management Relations Act, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law.").

The issue of whether federal courts may fashion rules of federal common law in the context of § 7121 of the FSLMRA has not been specifically addressed. The Supreme Court held in *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957)("*Lincoln Mills*"), that federal jurisdiction existed and that courts were authorized to fashion federal common law to decide cases under § 301 of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 185. That portion of the LMRA authorized federal courts to decide disputes under labor-management contracts in industries affecting interstate commerce, but failed to provide any substantive principles to guide federal courts in fashioning such remedies. The Court found that it had federal court jurisdiction under the statute and that it was authorized to "fashion a body of federal law for the enforcement of these collective bargaining agreements." *Lincoln Mills*, 353 U.S. at 451, 77 S.Ct. 923. The Court specifically enforced the agreement to arbitrate disputes contained in the collective bargaining agreement. *Id.*

■ An appropriate use of federal common law is to effectuate the congressional intent underlying a federal statute. In *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, the Supreme Court stated:

The federal courts have no general federal common law.... But this is not to say that

wherever we have occasion to decide a federal question which cannot be answered from the federal statutes alone we may not resort to all of the source materials of the common law, or that when we have fashioned an answer it does not become a part of the federal non-statutory or common law.... Were we bereft of the common law, our federal system would be impotent. This follows from the recognized futility of attempting all-complete statutory codes, and is apparent from the terms of the Constitution itself."

315 U.S. 447, 469–70, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

■ Under the FSLMRA, § 7121 requires that negotiated grievance procedure shall include procedures which provide for binding arbitration and further requires that either the union or the federal agency may invoke such arbitration. 5 U.S.C. § 7121(b)(1)(C). Yet, the statute fails to provide explicit guidance as to what those procedures must include. At a minimum, such procedures must bestow sufficient power upon the arbitrator to conduct a meaningful arbitration proceeding. This Court finds, as a matter of first impression, that Congress, when it provided in § 7121 that any negotiated grievance procedure shall be subject to binding arbitration, intended that the arbitrator have the power to compel witnesses to appear at the arbitration proceeding. The Court bases its finding on the implicit meaning of the statute itself and, alternatively, on federal common law.[4]

Like the court in *Teamsters*, this Court finds that the FAA is instructive in fash-

---

4. In its prior Order, the Court questioned its jurisdiction. Respondent seized upon this language to contend that the FSLMRA does not create an independent basis for federal court jurisdiction. When the Court questioned its jurisdiction, it was referring to whether it had the authority to enforce a

subpoena issued to compel the attendance of a witness residing in Dallas, Texas, rather then whether it had subject matter jurisdiction over the underlying action. The Court agrees that it does. The case arises under federal law within the meaning of 28 U.S.C. § 1331.

ioning federal common law to determine the arbitrator's subpoena powers pursuant to § 7121. *See Teamsters,* 328 F.3d at 330–31. The FAA, 9 U.S.C. § 7, provides that in an arbitration covered by the FAA an arbitrator may issue a subpoena, and:

> if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrator or arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

*Id.*

■ The Court finds that Arbitrator Riddle has the subpoena power necessary to compel witnesses to appear at the arbitration proceeding provided for by the Master Agreement between the Union and the Agency. The Master Agreement authorizes each party to an arbitration proceeding to call witnesses. That right would be meaningless if the Arbitrator were without any authority to compel witnesses to appear and testify.

## ENFORCEABILITY OF THE SUBPOENA

Respondent contends that the subpoena is invalid because it fails to comply with Fed.R.Civ.P. Rule 45.

The subpoena in question was served upon "Katie Bozeman, Keeper of the Records" at Forrest City, Arkansas, and issued to Ms. Bozeman. Ms. Bozeman is the Human Resources Manager at FCI Forrest City, Arkansas. Two separate issues are presented by the Petitioner's attempt to secure Mr. Thompson's hearing attendance by service of a subpoena upon Ms. Bozeman. First, the Court must consider: (1) whether it has the authority to enforce a subpoena served upon Mr. Thompson, a non-resident of this district; and (2) whether it was appropriate to serve Mr. Thompson by serving Ms. Bozeman with the subpoena.

■ Assuming, *arguendo,* that the Petitioner was required to comply with Rule 45 of the Federal Rules of Civil Procedure,[5] this Court would have the authority to compel Mr. Thompson to appear and testify in the arbitration hearing, which is the equivalent of a trial, even though he resides outside this district and beyond the 100–mile limit of Rule 45. The majority of courts to consider the issue have held that a court may compel the trial testimony of parties and, where the party is a corporation or entity, the party's high-level employees or officers even when the person to be compelled resides beyond the 100–mile range for subpoenas. *See Archer Daniels Midland Co. v. Aon Risk Servs., Inc.,* 187 F.R.D. 578, 587 (D.Minn.1999)(recognizing distinction between "ordinary employees, and ... directors, officers, and other high-level representatives" for purposes of compelling appearance to testify); *Younis v. American Univ. in Cairo,* 30 F.Supp.2d 390, 395 n. 44 (S.D.N.Y.1998)(recognizing that officers of an Egyptian university which was a defendant in the action could be compelled to appear and testify in New York); *Venzor v. Chavez Gonzalez,* 968 F.Supp. 1258,

---

5. This issue is unresolved in this Circuit. The Eighth Circuit, interpreting the FAA, reserved for "another day" the issue of whether an arbitrator's subpoena power is limited by the 100 mile limitation contained in Fed.R.Civ.P. 45(b)(2), noting that the question was "thorny." *In re Security Life Ins. Co. of America,* 228 F.3d 865, 871 –872 (8th Cir.2000)(approving the arbitrator's power to order the pre-hearing production of documents).

1267 (N.D.Ill.1997)(the 100–mile "limitation on a trial subpoena applies only to 'a person who is not a party,'" citing Fed. R.Civ.P. 45(c)(4)(A)(ii)); *Nat'l Property Investors, VIII v. Shell Oil Co.*, 917 F.Supp. 324, 329 (D.N.J.1995)("[U]nlike party witnesses, Fed.R.Civ.P. 45(c)(3)(A)(ii), non-party witnesses [from North Carolina] cannot be compelled to testify before this Court . . .").

Mr. Thompson, the South Central Regional Director of the BOP, is a high-level representative of the Agency, a party to the arbitration.

■ Assuming Arbitrator Riddle's subpoenas must comply with Rule 45, the Court believes that it has the authority to compel the Agency to produce Mr. Thompson for the purpose of testifying in the arbitration proceeding being conducted in this district.

■ The Court must still, however, resolve the issue of whether it was appropriate to issue the subpoena to Katie Bozeman rather than to Mr. Thompson.

Petitioner argues that Director Thompson designated Katie Bozeman at FCI Forrest City, Arkansas, as his "local agent" for service of process, and thus, that it was appropriate to serve the subpoena to compel Ron Thompson's attendance on Katie Bozeman. This argument apparently derives from a statement by Mr. Thompson in the grievance response which states: "Should the union wish to pursue this grievance to arbitration, Warden Morrison, or his designee, is to be considered our representative in this matter. All future discussions and/or communications on this issue, including requesting or selecting arbitrators, should be addressed with Warden Morrison or his staff." (Grievance Response, attached as Exhibit 3 to Petition.)

Petitioner further supports the manner in which he attempted service by the Declaration of Roger D. Payne, President of the Local Union, who states that Ms. Bozeman serves as the contact person for the local Warden and has been delegated to receive correspondence for the Regional Director. (See Exhibit 1 to Petitioner's Reply Brief of July 7, 2003).

After considering the submissions, the Court concludes that the parties agreed to the course of conduct followed by Petitioner. By authorizing Ms. Bozeman to receive all future communications regarding the grievance, Mr. Thompson tacitly, if not explicitly, agreed to proceeding in this fashion. The Court therefore concludes that the subpoena may not be stricken based upon the fact that it was issued to Ms. Bozeman, rather than to Director Thompson directly.

## MATERIALITY OF THOMPSON'S TESTIMONY

Director Ron Thompson was the decision-maker with regard to the grievance Petitioner is appealing to arbitration. Despite this role, Director Thompson states that he has no personal knowledge of the facts or omissions giving rise to the grievance. It appears that he responded to the grievance based upon information he received from FCI Forrest City and documents received from the facility, such as the Labor Management Relations (LMR) minutes. (Declaration of Ronald G. Thompson, Exhibit A to Respondent's Response to Court's Order of October 2, 2003). The fact that Director Thompson was not involved in any manner in the facts giving rise to the grievance does not mean that he has no knowledge relevant to the arbitration. As the decision-maker who denied the grievance which is the subject of the pending arbitration and who admittedly obtained information and documents from Forrest City which he used to determine that the grievance should be

denied, Director Thompson may well have knowledge which may prove relevant in the arbitration hearing. In any event, this Court would have to inquire further into the scope and merits of the underlying dispute to make this determination.

Petitioner contends that the Court should not make an independent assessment of whether Director Thompson has information material to the arbitration. The Court agrees. As the Eight Circuit has held, district courts are not required to make an independent assessment of the materiality of information sought by a witness before acting to compel compliance with an arbitration panel's subpoena. *In re Security Life Ins. Co. of America*, 228 F.3d 865, 871 (8th Cir.2000). Such a requirement "is antithetical to the well-recognized federal policy favoring arbitration, and compromises the panel's presumed expertise in the matter at hand." *Id.*

### CONCLUSION

For the reasons herein stated,

IT IS THEREFORE ORDERED THAT Petitioner's Motion to Compel Witness to Obey Subpoena (Docket No. 1) be, and it is hereby GRANTED. Respondent is hereby directed to produce Director Thompson for testimony in the arbitration proceeding.

IT IS FURTHER ORDERED THAT Respondent's Motion to Substitute Declaration (Docket No. 13) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Respondent's Motion to Correct Style of Case (Docket No. 15) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Petitioner's Motion to Substitute Originals of Affidavits for Facsimile Copies (Docket No. 16) be, and it is hereby, GRANTED.